74 So.2d 491

**John H. McCRAY**

**v.**

**STATE of Alabama.**

**1 Div. 585.**

Supreme Court of Alabama.

June 30, 1954.

[redacted]

276

Harry Seale and W. A. Marsal, Mobile, for petitioner.

Si Garrett, Atty. Gen., and Maury D. Smith, Asst. Atty. Gen., opposed.

CLAYTON, Justice.

Petitioner, John H. McCray, Jr., insists upon three propositions for reversal of the judgment of conviction against him for the offense of manslaughter. First, that the verdict was contrary to the overwhelming weight of the evidence; second, certain remarks of the trial judge to the jury during the course of its deliberation, relative to the matter of possible parole for defendant; and third, the refusal to defendant of his requested charge No. 6.

Propositions numbered 1 and 3, are correctly and adequately treated in the opinion

of the Court of Appeals and will not be further discussed here. Proposition 2, raised by petitioner, concerns remarks of the trial court made in response to questions by the jury, which are delineated by the reporter in his statement of the case. Most of our cases, which are most closely associated with the case at bar, relate to remarks in argument to the jury by counsel for the state. However, in the case of Burch v. State, 32 Ala.App. 529, 530–531, 29 So.2d 422, 423 our Court of Appeals, through its Presiding Judge Bricken, in considering the statement by the solicitor in his argument to the jury that " 'Counsel for the defendant are trying to make monkeys out of this jury, and they are laughing up their sleeves at you,' " said:

"Certainly, when the trial court, by its action in overruling the objection interposed, the court manifested its approval of the uttered words and gave its full endorsement thereof as being true. The statement, whether so intended or not, was insulting and otherwise objectionable and the court erred to a reversal in not taking prompt and decisive action to eradicate the statement instead of adding his approval thereof to the effect that such statement in the opinion of the court was true."

In the case of Boyle v. State, 229 Ala. 212, 154 So. 575, 587, the solicitor, in his argument, stated that the effect of finding defendant not guilty by reason of insanity would be to " 'put him upon the ground' ". Defendant's objection was overruled. This court, in considering this matter, had this to say:

"Clearly the sole question in this connection was whether defendant was 'not guilty by reason of insanity.'

"What might happen if he were sent to the insane asylum, instead of the penitentiary, should not have been thrown into the case to influence the verdict. The action of the trial court was an invitation to the jury to consider such contingency."

In the case of Peterson v. State, 231 Ala. 625, 166 So. 20, 23, the solicitor in his argument to the jury said he hoped the jury would fix it so that this man would not get off with any penitentiary sentence by the jury returning the death verdict, and that if they did sentence him to the penitentiary a mushy parole board would let him out in a little while, and that it had been his experience that murderers did not stay there long; * * * that besides all this he could be pardoned and released from the penitentiary, and that he wanted the jury to fix it, by their verdict, that this man could never escape or get out of the penitentiary by giving him the death sentence. This court said: "It is true the arguments of the solicitor were highly improper and should not have been made; * * *."

Likewise, in Oliver v. State, 232 Ala. 5, 9, 166 So. 615, 617, it was held:

"The argument of the solicitor that there was a Governor with pardoning power was likewise improper and excluded. These remarks of the state's counsel were of the class of improper arguments which may be remedied or their evil effects eradicated by instructions of the court. Anderson v. State, 209 Ala. 36, 95 So. 171; Bachelor v. State, 216 Ala. 356, 113 So. 67; Peterson v. State, [231 Ala. 625], 166 So. 20."

The same holding was made in Cobb v. State, 248 Ala. 548, 28 So.2d 713, following the holding in Pilley v. State, 247 Ala. 523, 25 So.2d 57, 60. pertinent parts of which opinion are:

"It was improper for the assistant solicitor in his argument to the jury to state that if the jury returned a verdict of murder in the first degree and fixed punishment at death that the appellant would automatically get his trial reviewed on appeal. The only effect of this argument would be to lead the jury into the mistaken belief that their findings on the facts could be reviewed by a higher tribunal and thereby lessen the sense of responsibility resting on them. * * *

"But we do not think that this case should be reversed because of such arguments, for they are of that class of improper arguments which may be remedied or their evil effects eradicated by instructions of the court, and the trial court, after objections were interposed by appellant, strongly instructed the jury that they should decide the case on the evidence presented to them and should not be concerned with any future action which might be taken by appellate courts or pardoning authorities. Oliver v. State, supra; Bachelor v. State, Peterson v. State, supra."

In the case of Moulton v. State, 199 Ala. 411, 415, 74 So. 454, 456, the trial court in its charge to the jury said:

" * * * 'For the first time in the history of this court since the appointment of an official stenographer so far as I am advised, the judge of the court has been requested to render his charge to the jury in writing. This is a privilege which the law gives, but whether I will be able to make the law in this case more plain to you in a written charge than I could by minutely explaining it to you orally it matters not.' "

Exception was reserved to the first sentence. This court said of the quoted part of the charge:

"The statement made by the judge and now in question lays down no proposition of law, nor does it state or intimate any opinion as to any specific issue of controverted fact, but it was deliberately addressed to the jury, and defendant contends that its only possible purpose and tendency was to reflect upon the defense, or, more accurately speaking, upon counsel's conduct of the defense. The court here agrees that the remark should not have been made, * * *. * * * it is matter of common knowledge that jurors are very susceptible to the influence of the presiding judge, watching him with a quick understanding of every indication of opinion, and while we are not to be misled into setting up a too exacting standing for trial

judges, we must consider the subject of this exception with a view to its capacity of interpretation as an index of what the judge thought of the accused, his counsel, or his case. Indulgently considered, it seems to have been nothing more than an expression of irritation that the request for a written charge should have been made in the conditions then and there obtaining. But the occasion was charged with grave responsibility; the expression of the judge's opinion was given in formal charge to the jury and had every appearance of great deliberation. It cannot be assumed that the jury gave it no consideration. At best it was erroneous, and it carried a suggestion that should have been carefully avoided. * * *

In the light of the above quoted authorities, we consider the present situation in which on of the jury, in the course of its deliberation, inquired of the court as to what part of the sentence which it should impose upon the defendant might be deducted by parole. There is little room for doubt that the jury made its inquiry for the purpose of including in its determination of length of sentence to be imposed upon the defendant the proportionate part of such sentence which might be remitted by parole. This was not a matter for the consideration of the jury, and the court should have so instructed them in positive terms. Cobb v. State, supra; Pilley v. State, supra; Peterson v. State, supra; Oliver v. State, supra.

But the trial court in answer to the juror's question said: "That is a matter purely with the Parole Board. *It (is) generally customary for them to allow a man a third of the time,* but the rules change every day with them." [Emphasis supplied.] Answers by the court to further questions from the jury possibly tended to reduce the impression on the minds of the jury that parole might be expected for the defendant when two-thirds of the sentence imposed on him, in the instant case, should have been served. But it is left to speculation on the part of the jury as to whether the Parole Board might increase or decrease the fraction of the prisoner's sen-

tence actually to be served in the penitentiary. No instruction was given that the jury must make a verdict based on the evidence only and not consider possible future parole. From the questions of the jury and the answers of the trial court, the jury might reasonably have considered such action on their part as entirely proper. Boyle v. State, supra.

In Griffin v. State, 90 Ala. 596, 601, 8 So. 670, 673, this court observed: "We know that jurors are easily influenced by remarks from the bench, and the slightest intimations of the court are seized upon and exert a controlling influence upon them." Also, our Court of Appeals in Neal v. State, 36 Ala.App. 156, 159, 54 So.2d 613, 616, quotes a previous expression of that court:

"* * *'That a trial judge wields a great influence upon the jury cannot be questioned, for it is their duty to follow his instructions as to the law. So, whenever he expresses an opinion on any disputed fact, or of the character of a witness, or compliments one attorney at the expense of another, or uses language which tends to bring an attorney into contempt before the jury, or uses any language or makes any intimation which tends to prejudice them, he commits an error of law, which would, of necessity, effect a reversal of the judgment and a remandment of the cause.'* * *"

A situation analogous to the instant case arose in the case of Houston v. Commonwealth, 270 Ky. 125, 109 S.W.2d 45, 46; pertinent parts of the opinion of the Court of Appeals of Kentucky are quoted:

"After the jury had retired to their room and had considered the case for a while, this occurred: 'The jury returned to the court room and asked the following question: Under this indictment under the Habitual Criminal Act, if we give this man life, would that prevent him being pardoned under this Habitual Criminal Act?" Judge: "No, it would not prevent that." Counsel for defendant excepts to the question asked and the ruling of the court on the question. Judge: "I didn't rule on it, I just answered it." Defendant excepts to the answer. * * *'

* * * * * *

"The question asked by the jury related solely to what a co-ordinate branch of the government could do, which was a point of law that was not involved in this case and not one of this jury's concern, and instead of answering the question as he did the court should have said something like this: 'Section 225 of the Criminal Code of Practice requires me to give you in writing all the law of the case and I have done so in the instruction I have given you. That is all I am allowed to tell you.'

"In the case of Postell v. Com., 174 Ky. 272, 192 S.W. 39, 44, this court learned in some way, a similar question and answer had been made, and although it did not appear in the bill of exceptions, that judgment was reversed for other reasons. This court regarded what was said and done there of enough importance to condemn it 'for the guidance of the trial and other courts in the future.' Many sessions of the General Assembly have since come and gone, and no attempt has been made to change the interpretation we then made of section 249 of the Criminal Code of Practice so we still adhere to what we said of it in the Postell case, and hence we regard what was said and done in this case as reversible error."

Likewise, a similar situation arose in the case of Coward v. Commonwealth, 164 Va. 639, 178 S.E. 797. The Supreme Court of Appeals of Virginia, in reversing a judgment of conviction in that case made the following observation and holding:

"After the jury had retired to its room, it returned and inquired of the court 'what time the defendant would get off while he was confined in jail.' To this inquiry the court replied: 'The law is

280

that the jailer shall also keep a record of each convict, and for every month that any convict appears by such record to have faithfully observed the rules and requirements of the jail while confined therein, and not to have been subjected to discipline for violation of same, there shall, with the consent of the judge, be deducted from the term of confinement of such convict ten days.'

"Thereupon the accused moved the court to declare a mistrial because it had made this reply to the inquiry of the jury.

*     *     *     *     *     *

"* * *. When the jury inquired of the court, 'What time the defendant would get off while he was confined in jail,' it could have had but one purpose in mind. It wanted to know the actual time of his confinement for any sentence which might be imposed. * *

"The consideration which might be extended to a prisoner for good conduct was a matter which did not fall within its province.

"Under an act of the General Assembly, approved March 11, 1932, Acts 1932, p. 152, c. 136, a prisoner whose conduct is good is entitled to have deducted from each month during which the sentence runs, 15 days; that is to say, one sentenced to 20 years' confinement would serve only ten years. A jury which has been instructed as to this statute might be of opinion that 10 years' confinement was just punishment for a proven crime. In order to impose it, a 20-year sentence would be necessary. Plainly, such a verdict would be indefensible.

*     *     *     *     *     *

"The net result is this: It is error for the court, by its instructions, or for counsel in argument, to tell the jury that its sentence imposed and confirmed may be set aside or cut down by some other arm of the state. It is their duty

to inflict such punishment as appears to be just and proper, and this is the full measure of their duty. * * *

"The power of the Governor to pardon should not be commented upon in argument, and it is plain error to tell the jury that under an established rule and in the ordinary course of events such sentence as it may impose will not be suffered, but will be substantially diminished. In the instant case, this is what the jury wanted to know, and its purpose in seeking information is too plain for argument. These jurors should have been told that it was their duty, if they found the accused guilty, to impose such sentence as seemed to them to be just. What might afterwards happen was no concern of theirs. In its failure to do this, we think the trial court was in error. For this reason its judgment must be reversed, and it is so ordered."

■ The verdict of a jury in a criminal case should be based solely upon the evidence adduced on the trial and be absolutely free from outside influences. Or, as expressed by our Court of Appeals in Hammond v. State, 26 Ala.App. 391, 392, 160 So. 900, 901:

"A party—any party—is entitled to a trial freed from any extraneous influences on the part of any one that might be to the prejudice of that party's rights. And it is the duty of the courts to see that he gets it."

■ In arriving at a proper sentence to be imposed on the defendant, the proportionate part thereof which probably or possibly might be deducted by the Parole Board was not a proper factor to be considered by the jury.

The judgment of the Court of Appeals is reversed and the cause is remanded to the Court of Appeals.

Reversed and remanded.

All the Justices concur.