312 So.2d 583

**Theodis KENDRICK, alias**

v.

**STATE.**

**3 Div. 324.**

Court of Criminal Appeals of Alabama.

April 22, 1975.

Sam W. Taylor, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

PER CURIAM.

A grand jury of Montgomery County, Alabama, indicted Theodis Kendrick for the commission of rape. Upon his trial a petit jury found him guilty and fixed his punishment at imprisonment in the penitentiary for a period of 40 years. Judgment and sentence were in accord with the verdict of the jury. Kendrick appealed to this court. There was no motion for a new trial.

Kendrick was represented by counsel throughout the proceedings in the trial court, at arraignment, during the trial and at the time sentence was pronounced and judgment entered. He is represented here by court appointed counsel who is the same attorney who represented him below.

In brief filed here on behalf of Kendrick, it is contended that the judgment of conviction should be reversed because the trial court did not respond properly to an inquiry directed to the court by the foreman of the jury during a break in the jury's deliberation.

The transcript of the record reveals that after the case had been submitted to the jury, and the jury had retired to the jury room, it returned into open court where the following proceedings occurred:

"THE COURT: All right. I am informed by the Bailiff that you have a question. You may pose it.

"THE FOREMAN: Well, Judge, the question is: When is a person eligible for parole? How much of their sentence do they . . .

"THE COURT: All right. Let me answer the question very emphatically in this fashion. I believe at the beginning of the trial, 'I emphasized, and in the charge of the trial (sic), I emphasized that your duty is to try this case based upon the facts that are presented for your consideration from this witness stand, and nothing else. And when you go in that Jury Room and deliberate on parole or who is eligible or who is not, you are simply not upholding the oath of office that you took as Jurors to well and truly try the issues based upon the evidence which is presented for your consideration. Now, your job is to do this; to determine whether this defendant is guilty or not guilty. If he is not guilty, come back with a verdict which says, 'We the Jury, find the defendant not guilty.' If you find the defendant guilty, then it is your duty to determine what is the punishment which would be imposed upon this defendant from ten years to life imprisonment. Any other matters are for others to determine and for you not to be concerned with. Your responsibility is arduous and weighty enough. Do not concern yourself with others and do not concern yourself with matters which are not of your concern in the first place. All right. Now, you

may retire and resume your deliberations.

(Whereupon, the Jury returned to the Jury Room.)

"THE COURT: Is the State satisfied?

"MR. THOMAS: Yes, sir.

"THE COURT: Defense satisfied?

"MR. TAYLOR: No, your Honor. I would like to interpose an objection.

"THE COURT: Well, state it in the record.

"MR. TAYLOR: I would like to interpose an objection to the further oral charge of the Court on this ground. That the Court did not advise the jury that they were to assume that there would be no parole in making their decision as to how much time.

"THE COURT: Well, the objection is duly noted.

"MR. TAYLOR: Thank you, Your Honor."

The observation of the court, "Well, the objection is duly noted" is tantamount to the overruling of the objection. See Harrison v. Baker, 260 Ala. 488, 71 So.2d 284.

Four cases are cited in appellant's brief in support of his position presently under consideration. The opinions in Oliver v. State, 232 Ala. 5, 166 So. 615, and Hammond v. State, 26 Ala.App. 391, 160 So. 900, contain the broad statement often repeated, to the effect that a party is entitled to a trial free from any extraneous influence on the part of anyone that might be to the prejudice of that party's rights. In *Oliver,* supra, it is said to the effect that each case of alleged improper deliberations of the jury must be judged by its particular facts. See Bell v. State, 227 Ala. 254, 149 So. 687.

The other two cases deserve more detailed consideration. In McCray v. State, 261 Ala. 275, 74 So.2d 491, a juror inquired of the court:

" '. . . if a man is sentenced for a certain number of years, how would a parole and given time apply, on a certain number of years, say five, ten or whatever the sentence might come, from there on up?' "

The Court replied:

" '. . . That is a matter purely with the Parole Board. It is generally customary for them to allow a man a third of the time, but the rules change every day with them.' "

The Court further stated:

" '. . . . That's all; that's the law. It is purely up to the Parole Board under the law. That's all I can say.' "

And the Court replied in the negative to a juror's question:

" '. . . There is no way for you, Judge, to define what the probabilities would be?' "

A juror posed an additional question:

" '. . . I see, just as a juror, is there any particular rule that they follow?' "

The court replied:

" '. . . Not a thing.' "

The Supreme Court of Alabama reversed because the trial court failed to instruct the jury in positive terms that the possibility of a parole was not a matter for the consideration of the jury. See 261 Ala. at page 278, 74 So.2d at page 494.

In Lawley v. State, 264 Ala. 283, 87 So. 2d 433, a juror inquired of the Court as to "the number of years that he [defendant] would be eligible for parole." The court replied:

" '. . . Well, I don't think they have any number. They have certain rules down there, depending on a good record; a man can qualify for probation after a certain length of time. In other words one with a life sentence gets paroled lots of times but he is supposed to serve a third of his sentence. Different ones have different times.

\*　　\*　　\*　　\*　　\*　　\*

" '. . . It is possible with a life sentence if he makes a good record he might qualify for parole in 15 years, maybe, that is altogether up to the Board of Pardons. Gentlemen, if that information is helpful, that is as near as I can tell you about it.' "

After an objection was interposed by counsel for defendant the trial court made the following statement:

" '. . . I haven't given them any instructions. That has got nothing to do with this case, gentlemen. The fact is that is information I was trying to give you in answer to your question. That isn't a question before you gentlemen and shouldn't enter into it; it has got nothing to do with the facts in this case and not really a part of it. Anything the Court may have said is not giving you instructions and should not have any effect on your verdict in this case, whether you find this defendant guilty or not guilty and it is not proper for you to consider it, and I withdraw anything I have said about it.' "

An exception was interposed to the court's remarks. The Supreme Court of Alabama reversed, saying in effect, that the remarks of the trial court as to the laws or customs governing the granting of paroles were erroneously made and that the effort of the trial court to cure the error by withdrawal of the remarks were inefficacious to eradicate the prejudicial effect of the court's erroneous remarks.

The response directed to the juror by the trial court in this case is entirely different from the responses made by the trial courts in the McCray and Lawley cases. Consequently, the holdings in those cases are not dispositive of the question here under consideration.

As we have heretofore indicated in McCray and Lawley, the trial courts referred to the laws or customs under which the Parole Board operated. In this case the trial court made no such reference and as soon as the nature of the juror's inquiry became apparent to the court, the juror was interrupted and the court proceeded in an emphatic manner to advise the jury in effect, that the question indicated possible consideration of improper matter by the jury and forcibly admonished it to render its verdict based solely on the facts presented to it from the witness stand.

There are other Alabama cases to which consideration will be given but which do not, in our opinion, apply to this case.

In Taylor v. State, 42 Ala.App. 617, 174 So.2d 335, cert. denied, 278 Ala. 713, 174 So.2d 336, the Court of Appeals reversed the judgment of conviction because of the apparent gratuitous instructions given to the jury by the trial court to the effect that the jury was not a pardoning board and would not be justified in pardoning a person who is being tried for a crime. Reversal was based on the holding of the Supreme Court of Alabama in the McCray and Lawley cases.

The holding of this court in Yelton v. State, 50 Ala.App. 168, 277 So.2d 912, was based on facts altogether different from those presented in this case. In effect, this court held that the trial court erred in not granting a new trial because during a meal preceding the jury's deliberations, the sheriff informed the jury as to the possibility of parole in the event the defendant was sentenced to the penitentiary. In response to a question asked him by one of the jurors as to how soon a person could be paroled if given a life sentence, the sheriff replied, "Well, it depends . . . well, it depends on their behavior . . . well, the earliest they would ever be considered would be ten years." The holding in Yelton, supra, is obviously not apposite here.

As shown above, the holdings of the appellate criminal courts of this State are to the effect that the possibility of future interference with the sentence imposed by pardon or parole authorities is not a proper matter for the consideration of a jury faced with the task of determining a defendant's guilt and imposing punishment.

■ Jurors have not been isolated from the every day affairs of life. They know there are boards, commissions and the like which have been created for the purpose of handling requests for pardons and paroles, yet it would be inadvisable for a trial court in his original oral charge to warn the jury not to consider the possibility of a pardon or parole in the future in determining the length of a sentence. *Yelton*, supra. So it can be expected that in some instances jurors during the course of their deliberations are going to discuss the possibility of the defendant being pardoned or paroled and a discussion of this question will probably cause one or more jurors to want instructions from the court. That is what happened in this case as far as the record discloses.

When this spontaneous action on the part of the jury is presented to the trial court it is faced with a difficult and somewhat embarrassing situation.

■ What should the trial court do when presented with this dilemma? We construe the cases from this jurisdiction to indicate that the trial court should not attempt to explain the functions of the pardon or parole board or to explain how it operates but to inform the jury in no uncertain terms that such matters are not proper for the jury's consideration and that the jury should determine the guilt or innocence of the defendant and the length of his imprisonment based entirely on the evidence presented to it.

■ It is the opinion of this court that the lower court's response was so worded as to convey the idea that the jury in arriving at its verdict should not assume that the defendant would possibly be pardoned or paroled.

On page 769 of 35 A.L.R.2d, begins a very interesting and informative annotation on the "Procedure to be followed where jury requests information as to possibility of pardon or parole from sentence imposed". Also see annotation "Prejudicial effect of statement or instruction of

court as to possibility of pardon or parole". 12 A.L.R.3d 832.

The foregoing disposes of the only point argued in the brief filed on behalf of the appellant, Theodis Kendrick and that filed on behalf of the State.

■ But in this criminal case we "must consider all questions apparent on the record or reserved by bill of exceptions [now transcript of the evidence] and must render such judgment as the law demands". Section 389, Title 15, Code 1940. The language just quoted, however, does not mean that in a case of this kind a review will be made of questions which were not properly raised in the trial court. Segers v. State, 283 Ala. 682, 220 So.2d 848; Cauley v. State, 33 Ala.App. 557, 36 So.2d 347; Wallace v. State, 290 Ala. 201, 275 So.2d 634.

So we come to the treatment of those questions which were properly raised in the trial below which are apparent on the record or in the transcript of the evidence although not argued in brief which are worthy of consideration.

The appellant requested affirmative charges in his favor with and without hypothesis. The evidence adduced below was substantially as hereafter summarized.

The prosecutrix was a thirteen-year old girl in May of 1974. On a Sunday afternoon in that month she and her girl friend were walking on a street in Montgomery, near some railroad tracks. The two young girls, both black, were accosted by Kendrick, who is also black. Kendrick had a stick in his hand. He told the girls if they did not scream he would not hurt them. Kendrick took them under a tree where he told them to disrobe. The girls were frightened and took off some of their clothes. Kendrick then "took" the girls into a big box (packing crate) where in accordance with Kendrick's instructions, the girls took off their "underwears". Kendrick then got on top of prosecutrix. She screamed and was hit in the eye by Kendrick with a stick or fist. Kendrick then proceeded to forcibly have sexual in-

tercourse with prosecutrix. Soon thereafter he ran from the scene of the crime.

During the ravishing of prosecutrix, her girl friend was present but was not sexually molested. The friend ran for help. Prosecutrix put on her "culottes" but did not put on her "panties" or brassiere before help arrived. She was carried to a hospital and after being examined by a gynecologist she was hospitalized for three or four days.

The doctor testified:

"I found a quite frightened, teenaged, light skinned, black female who was on the examining table in the emergency room at St. Margaret's, with a large amount of blood coming out of her vagina. She had a large amount of bruises about her face and one eye was practically closed."

The doctor expressed the opinion that the girl he examined was a virgin prior to "this incident". The extent of the injuries to the girl were such that upon original examination the doctor entertained the view that surgery might be necessary but it was avoided by treatment of the injured area.

The girl friend's testimony was in most respects the same as that given by prosecutrix. She testified that after prosecutrix got up from the floor of the box or packing crate, blood was running down her leg.

Both girls identified the appellant from the witness stand as the man who ravished prosecutrix.

Sergeant J. C. Cunningham of the Montgomery Police Department was a witness for the State. He investigated the alleged rape of prosecutrix. He arrived at the scene about 1:29 P.M. on the afternoon of May 19, 1974. When he first observed prosecutrix, she was "crying a little bit but she was more like she was going in shock. She had a black eye and she had on a pair of culottes. She was bloody in the crotch and blood had run down her legs." After taking her to the hospital he went to the scene of the alleged crime. He saw the big box to which reference has been made. He described it as being an overseas packing crate made of plywood and being "about six feet tall and six feet deep and four or five feet wide." In the box he saw ". . . two pair of panties, a brassiere, a large pool of blood, a piece of human excretion, a pack of potato chips, a pack, I believe of Fritos and a carton or [sic] orange ade, and I found a little pearl ear ring."

After prosecutrix left the hospital, Sergeant Cunningham showed her some pictures. She did not identify any of the pictures as being that of her assailant. Kendrick's picture was not among those showed her at that time.

Detective C. R. Woods was a witness for the State. He investigated the alleged rape and as a result of that investigation he arrested Theodis Kendrick, the appellant here.

Before making the arrest, he showed prosecutrix several "mug books" which did not contain a picture of Kendrick. She did not identify her assailant at that time. Later prosecutrix was brought to police headquarters by her mother and she was shown another "mug book" which contained some pictures which had been developed recently. A picture of Kendrick was in that "mug book." In looking through that book of pictures, prosecutrix saw a picture and said, "That's him. No doubt in my mind." Later the girl friend, separate and apart from prosecutrix, identified a picture contained in the last mentioned "mug book" as being that of Kendrick.

Detective Woods arrested Kendrick at about 2:15 A.M., May 24, 1974, and shortly after the arrest he talked with Kendrick for 45 minutes to an hour at Police Headquarters. At that time Kendrick denied his guilt. Woods talked with Kendrick again on May 24, 1974. The talk began at about 11:00 P.M., and lasted for about an hour.

Detective Woods being asked to relate that conversation said:

"And at this time he stated that he was on these railroad tracks, and I asked him if he had come in contact with two young black girls, and he stated that he had. And I asked him if he had raped either one of them or had sex with either one of them, and he said, one of them, but he didn't intend to hurt her. And I asked him why he didn't have sex with the other and he said, 'At this time, he could see no future in it' and the only thing he stated other than that was that he did not intend to hurt anyone."

Woods thereafter stated that Kendrick said that he attacked this young girl but ". . . had not ever did this before."

Kendrick testified in his own behalf. He was 21 years of age at the time the crime was alleged to have occurred. He sought by his testimony to establish an alibi; to show that he could not have been present at the scene at the time the crime is alleged to have been committed. He also denied that he told Detective Woods, (1) that he had raped anyone; (2) that he had sexual intercourse with anyone; (3) that he ". . . didn't see any future in having sexual intercourse with somebody"; (4) that he didn't mean to hurt anybody or that he saw any girls on the railroad tracks. He testified that he tried to describe to Detective Woods what he had done on the afternoon in which the rape is alleged to have occurred. He stated that the first time he ever saw either of the girls was after he had been put in jail. He testified that he was hit on the head and kicked in the mouth by Detective Woods during the course of the questioning which began at 11:00 P.M., May 24, 1974, and that Woods offered him a specific sentence in exchange for a signed confession. It was brought out by his counsel that at the time of the offense with which he was charged, he had been on parole for a period of 3 weeks after serving 5 months of a sentence of a year and a day for grand larceny committed in Morgan County, Alabama. He stated that he had never been convicted of any other felony or "penitentiary type offense."

Kendrick further testified that he did not rape "this girl", did not make the girls take off their clothes; did not hit "that girl" in the face; and that he had never said he did those things.

Detective Woods testified for the State on rebuttal. He denied that he hit or kicked Kendrick or threatened him in any way.

The evidence delineated above is sufficient to demonstrate beyond peradventure that the trial court correctly let this case go to the jury. The general affirmative charges requested by appellant were properly refused. See Lockett v. State, 50 Ala.App. 58, 276 So.2d 643; Taylor v. State, 249 Ala. 130, 30 So.2d 256; Cobb v. State, 250 Ala. 496, 35 So.2d 86; Mayberry v. State, 281 Ala. 573, 206 So.2d 585; Rudolph v. State, 275 Ala. 115, 152 So.2d 662.

State's exhibits 1 through 5 were admitted without error. They are pictures of the interior and exterior of the box or packing crate where the rape is alleged to have occurred and of the surrounding terrain. They tended to elucidate material facts under inquiry. Rudolph v. State, supra; Seals v. State, 271 Ala. 142, 122 So. 2d 513; Reedy v. State, 246 Ala. 363, 20 So.2d 528.

Likewise we do not regard as inadmissible the undergarments which were found in the box or packing crate by Sergeant Cunningham when he arrived at the scene of the alleged crime. They corroborated the testimony of prosecutrix and her friend to the effect that they were required to disrobe before prosecutrix was ravished. Reedy v. State, supra; Smith v. State, 248 Ala. 363, 27 So.2d 495; Seals v. State, supra; Puckett v. State, 213 Ala. 383, 105 So. 211.

During the course of the State's re-direct examination of Sergeant Cun-

ningham, counsel for the defendant below stated:

" . . . we would object to the State making some display of introducing some blood stained garments . . . let the record show that a package containing blood stained garments are now visible to the jury."

The trial court responded:

"Well, I have seen what the package is and it doesn't appear to be anything except a plastic bag and until I have a view of it, it is just impossible for me to rule on it. I don't see anything in the view of the Jury that is inflamatory at this time."

There is nothing in the transcript of the evidence which tends to refute the trial court's statement nor does it appear that counsel for defendant below insisted upon a ruling after the trial court declined to rule on the objection for the reason it stated. In absence of a ruling adverse to the party complaining there is nothing for an appellate court to review. Dorroh v. Jefferson County, 264 Ala. 335, 87 So.2d 619; Smith v. Winkles, 49 Ala.App. 454, 273 So.2d 215; Lawson v. State, 51 Ala.App. 503, 286 So.2d 913. In other words in this criminal case in the absence of a ruling on the objection there is no question apparent on the record or reserved in the transcript of the evidence for review by the court in accordance with the mandate of Section 389, Title 15, supra.

The question is presented as to whether the confession and inculpatory admissions which Detective Woods testified Kendricks made to him were correctly admitted in evidence.

The settled rule of the courts of this State is that all extrajudicial confessions are presumed to be involuntary and, therefore, are prima facie inadmissible with the onus resting on the prosecution to repel the imputation of undue influence unless the attending circumstances affirmatively disclose the voluntariness of the con-

fession. Any inducement of profit or benefit held out; any hope engineered or encouraged that the prisoner's case will be lightened, meliorated, or more favorably dealt with if he will confess; either of these is enough to exclude the confession thereby superinduced. Any words spoken in the hearing of the prisoner which may, in their nature, generate fear or hope render it not only proper but necessary that a confession made within a reasonable time afterwards shall be excluded unless it is shown by clear and full proof that the confession was voluntarily made after all trace of hope or fear had been fully withdrawn or explained away and the mind of the prisoner made as free from fear, intimidation or hope for reward as if no attempt had ever been made to obtain a confession. The true test is whether under all the surrounding circumstances, a confession has been induced by a threat or a promise, express or implied operating to produce in the mind of the prisoner apprehension of harm or hope of favor. If so, whether true or false, such a confession must be excluded from the consideration of the jury as having been procured by undue influence. The duty rests in the first instance on the trial judge to determine whether or not a confession is voluntary. Wallace v. State, 290 Ala. 201, 275 So.2d 634, and cases cited.

It is also the rule in the State that an inculpatory admission in the nature of a confession, that is, directly relating to the fact or circumstances of the crime, and connecting the defendant therewith, are subjected to the same rules of admissibility as direct confessions, and are therefore prima facie involuntary and inadmissible. Washington v. State, 287 Ala. 289, 251 So. 2d 592 and cases cited.

It has been held by the Supreme Court of the United States, that if a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms that he has the right to remain silent; that anything he says can be used against him in court; that he has the

right to have counsel present at the interrogation; that if he is indigent and cannot afford to pay a lawyer the court will appoint a lawyer to represent him during the interrogation. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. See Wallace v. State, supra; Washington v. State, 287 Ala. 289, 251 So.2d 592; Carpenter v. State, 50 Ala.App. 543, 280 So.2d 804; 291 Ala. 351, 280 So.2d 808. In the Alabama cases just cited the necessity for the so-called *Miranda* warnings being given prior to the interrogation of a person in custody is recognized.

Before Detective Woods was permitted to testify in regard to the confession or inculpatory admissions he was examined outside of the presence of the jury so that the trial judge could determine whether the confession and inculpatory admissions were made voluntarily by Kendrick after being given the so-called *Miranda* warnings. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908; Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593; Duncan v. State, 278 Ala. 145, 176 So.2d 840; Taylor v. State, 42 Ala.App. 617, 174 So.2d 335; Bennett v. State, 46 Ala.App. 535, 245 So.2d 570; Rudolph v. Holman (D.C.), 236 F.Supp. 62.

Woods stated that before questioning Kendrick on the two occasions he advised him of his so-called *Miranda* rights by reading them to him from a card furnished by the Montgomery Police Department. Woods testified that Kendrick stated that he understood what had been read to him. The cards are in evidence and they contain the *Miranda* warnings. See Carpenter v. State, supra. The card which was read to Kendrick at the outset of the interrogation which began at about 2:15 A.M., on May 24, 1974, contains Kendrick's signature under the following language:

"I fully understand the foregoing statement and do willingly agree to answer questions. I understand and know what I am doing. No promise or threats have been made to me by anyone and pressure of any kind has been made against me by anyone."

Kendrick refused to sign the card which was read to him at the interrogation which began at 11:00 P.M., on May 24, 1974.

According to Woods no one threatened Kendrick or harassed him or offered him any kind of reward to get him to talk.

■ Counsel for Kendrick did not elect to elicit testimony from him at the hearing held outside the presence of the jury. In fact, no one was questioned on that occasion other than Woods. Kendrick could have taken the stand for the limited purpose of giving his version of the facts and circumstances surrounding the taking of the confession and inculpatory admissions without waiving his right to decline to take the stand in his own defense on the trial in chief or waiving any other right stemming from his choice not to testify. Boulden v. State, 278 Ala. 437, 179 So.2d 20; Duncan v. State, 278 Ala. 145, 176 So.2d 840.

■ We are of the opinion that the State met the burden which was upon it to show that Kendrick was adequately warned of his rights as set forth in *Miranda,* supra; that he waived those rights; and that the confession and inculpatory admissions were made voluntarily.

■ Hence, we hold that the trial court did not err in permitting those matters to go to the jury whose duty it was to consider all facts and circumstances surrounding the taking of the confession and the inculpatory admissions in determining the weight or credibility which it would give them. Wallace v. State, supra, and cases cited.

■ Reversible error does not appear in the action of the trial court admitting into evidence State's exhibits 8 and 9, which are the written forms from which Detective Woods read the *Miranda* warnings to Kendrick. Those forms had been previously read to the jury by counsel for the State without objection. Likewise, De-

tective Woods had testified that Kendrick had signed State's exhibit 8 and had refused to sign exhibit 9. The courts of this State have held that it is not error to allow facts to be shown over objection when they have already been proven without objection. Bush v. State, 282 Ala. 134, 209 So.2d 416; Lawson v. State, 51 Ala. App. 503, 286 So.2d 913.

 Outside of the presence of the jury, Detective Woods testified that after talking with Kendrick he checked on the statements made to him by Kendrick for the purpose of establishing an alibi. Over objection, Woods was permitted to testify:

"I found out that some of what he told me was right."

Woods further testified without objection that:

"All of it was not."

A motion to strike interposed by counsel for Kendrick was overruled. This testimony elicited ouside the presence of the jury could not have been prejudicial to Kendrick. It did not relate to the sole question there before the trial judge which was whether the confession and incriminating admissions were made voluntarily.

 As the trial was drawing to a close, Kendrick made known that he desired the testimony of two men who had been his cell mates at the time he was being questioned. He indicated that they would substantiate his claim that when returned to the cell after questioning by Detective Woods that his body showed signs of physical abuse. It appears that these two men had been sent to a penitentary far distant from Montgomery, and could not be returned within a reasonable time.

No effort had been made to have those persons subpoenaed and as we read the transcript of the evidence, Kendrick said that he had told his counsel of the physical abuse which he claimed was administered by Detective Woods, but the evidence does not show that counsel for Kendrick had been informed prior to trial that the two persons could give evidence tending to support his claim of bodily injury.

The trial court refused to continue the trial or to permit a showing as to what Kendrick's former cell mates would say if present in court. Under the circumstances of this case we can not say that the trial court abused its discretion in refusing to grant a continuance or to put the prosecution on showing by the defendant. Cagle v. State, 211 Ala. 346, 100 So. 318.

Mindful of our duty under Section 389, Title 15, Code of Alabama, we have examined the record for any reversible error, whether pressed upon our attention or not. We find no reversible error and the judgment of the trial court is due to be affirmed.

Affirmed.

All the Judges concur.