Appellant was indicted for murder in the first degree. The jury found her guilty of manslaughter in the first degree and fixed her punishment at ten years imprisonment in the penitentiary. She was represented at arraignment and trial by retained counsel. She pleaded not guilty to the indictment. After sentence was imposed, she gave notice of appeal and her bond was fixed at $7,500.00. She is free pending appeal and is here represented by trial counsel.
The evidence for the State tended to show that on the night of September 13, 1975, appellant stabbed her husband with a butcher knife which caused his death. Appellant admitted cutting or stabbing her husband but claimed she did so in self-defense.
There was no motion to exclude the State's evidence on the ground the State failed to make out a prima facie case; there was no request for the affirmative charge, and no exceptions were reserved to the Court's oral charge to the jury. Appellant did file a motion for a new trial on the ground, among others, that the verdict was contrary to the great preponderance of the evidence in the case.
Deputy Sheriff Rowdy McGee of Clarke County, Alabama, testified that he and his partner, Deputy James Kidd, were on routine patrol on the night of September 13, 1975, and that they received a dispatch over *Page 1351 
their radio at 11:17 p.m. to go to 211 Boyle Street in the city of Jackson to investigate a stabbing. The message requested a policeman and an ambulance and the operator stated that an ambulance was already en route from Grove Hill. McGee said they were only one-half mile from the Boyle Street address when they received the message. As they were looking for 211 Boyle Street, they heard a woman calling to them from a house approximately 100 feet off the street. They pulled into the yard of the house where the woman was calling and learned that the woman was the appellant, Laura Garraway. McGee further testified that they got out of their car and approached the front porch and saw a man sitting on the top step of the porch and he was slumped in a forward position. The man was later identified as the deceased, Homer Garraway. He had blood on his arm and chest and he was breathing heavily. McGee further testified that appellant was standing in the doorway talking very loudly. He said that she had on a red nightgown and was barefooted.
McGee further testified that he was trying to talk to the deceased but had a difficult time doing so, because appellant kept talking in a loud voice. He stated that neither he nor the Deputy asked appellant any question but she voluntarily made the statement, "I stabbed the ___ ___ ___ ___, and I wished I had killed the ___ ___ ___ ___." McGee further stated that appellant appeared to be drunk, that she was holding on to the screen door and she was weaving and her speech was slurred. Appellant objected to the question that led to the answer that "she appeared to be drunk" but the objection was not made until after the answer was given. This witness further testified he smelled the odor of alcohol on appellant's breath. McGee further stated that appellant had blood on the front of her gown but he did not observe any marks, cuts, bruises or injuries of any kind on appellant.
McGee further testified that an examination of the front room of the house revealed broken glass from a soft drink bottle and the glass in the front door was broken out. McGee stated that he and Deputy Kidd left the deceased on the front porch while they made their investigation and when they returned to the front porch, the deceased was lying down instead of being slumped forward. He appeared to be dead. At this point the Sheriff and Coroner of Clarke County were called to the scene of the homicide. The Sheriff took appellant into custody and carried her to the Jackson Police Department where a PEI test was given to her by Police Officer Van Dee. The results of this test were not stated to the jury.
The Sheriff testified that he was alone with appellant in the car on the way to the Police Department. He stated he was close enough to her to smell alcohol on her, and she was talking disconnectedly.
Deputy James Kidd testified to substantially the same facts as Deputy McGee except he stated that he did not go inside the house where the deceased lived. He stated he stayed with the deceased on the front porch until he was carried to the funeral home. He stated that appellant was talking in a "drinking manner." Appellant objected to the question that brought this answer, but the objection was made after the answer was given.
Mr. James L. Small, Assistant State Toxicologist, performed an autopsy on the deceased. Mr. Small's qualifications were admitted by the defense. He testified that in his opinion the deceased was five feet, five inches in height and weighed about 160 pounds. He took a blood sample and tested it for the presence of alcohol. He stated the blood alcohol level was 0.17 and this amount of alcohol indicated that the deceased was certainly under the influence of alcohol at the time of his death.
Mr. Small described the external wounds on the body of the deceased, showing that he was cut on his arms and elbow and that he had a bruise on the side of his head and there was a deep cut on the left upper chest. He stated that he did an internal *Page 1352 
examination and found that the wound to the chest entered the chest cavity and passed through the lung and the main vessel that comes off the top of the heart, the aorta. He said that the left lung cavity was filled with blood. He further stated that the depth of the wound to the chest was approximately four inches. He rendered an opinion as to the cause of death, stating that death was due to bleeding and trauma associated with a stab wound to the chest inflicted by a cutting instrument. He further stated that this stab wound was consistent with having been made by a butcher knife.
Appellant testified in her behalf. She stated that she was 44 years of age and that the deceased was 63 years of age at the time of his death and that they had been married 20 some odd years. She further testified that on the day of the homicide her husband came home around 5:00 p.m. and he brought a pint of vodka or gin and a six-pack of beer and started drinking. She stated that the deceased started an argument with her on the front porch of the house and cursed her; that she left the front porch and went to the kitchen in order to get away from him, but he came back to the kitchen and continued to curse her. He then grabbed her and beat her with his fists and kicked her in the stomach, and the deceased then stabbed her with a pocketknife in her leg and she threw hot dish water on him. She further testified that the deceased picked up an ax and started to hit her with it but did not, but he did throw a bottle at her which broke and glass was scattered in the front room of the house. According to her testimony the deceased then ran out of the front door to the house and she locked the front door to keep him from coming back in. The deceased broke the glass out of the front door with a stick and reached inside and unlocked the door and he came to her with a stick of wood and started beating her. She testified that he knocked her down near the sink and threatened to kill her and that in an effort to protect herself, she grabbed the knife from a drawer beside the sink and cut and stabbed the deceased. That after the deceased was stabbed, he walked into the living room and sat in a chair. There was blood in the bottom of the chair. After sitting in the chair a few minutes, he got up and walked to the front porch and sat down. She testified that she went to the front porch and asked him if he wanted her to call a doctor, but he did not reply. She did call the police. She further testified that she weighed about 99 pounds and that she stabbed the deceased in trying to protect herself.
On cross-examination she testified that the deceased drank two cans or bottles of beer and most of the pint of gin; that she picked up the bottle of gin and drank it straight to keep him from drinking any more but she denied that this made her drunk. She further testified that the deceased threw two bottles at her and that both of them broke and she swept up a part of the glass to keep her grandchildren from cutting their feet. She identified State's Exhibit One as the butcher knife she used to stab the deceased and this knife was admitted into evidence. She further stated that after the deceased cut her with a pocketknife, he closed the knife and put it back in his pocket.
Appellant was examined by a medical doctor in Jackson, Alabama, on September 18, 1975. He stated that his examination revealed that defendant had a black eye on the right side, that she had a two-by-two centimeter lump on the right side of her head and that she had a four-by-three centimeter bruise to the upper part of her arm; that she had an eight-by-three centimeter bruise to the right flank area and had two one-and-one-half centimeter puncture type wounds to the right mid-thigh area. The doctor further testified that in his opinion the puncture wounds were made by a sharp object, such as a knife and he estimated that these wounds were not over four or five days old.
On cross-examination the doctor testified that while he took into consideration the history given him by the patient, that if she *Page 1353 
had given him no history at all, he could have given an account of what happened to her, just by examining her.
One of the appellant's attorneys testified that he had an opportunity to observe the injuries to appellant on September 16, 1975, and that on that date appellant had a black eye and two puncture wounds on the inside of her thigh. He stated that he did not observe the bruises on her arm or back and that he observed her on the day she was released from the Clarke County Jail and her family brought her from the jail straight to his office.
Appellant claims that the Court committed reversible error in allowing Deputy Sheriff Rowdy McGee to testify that the defendant appeared to be drunk, and in permitting Deputy Sheriff James Kidd to testify that the defendant acted in a drunken manner. The record reveals in both instances that appellant's objections were made after the witnesses had answered the questions. Witnesses may always be allowed to testify as to the appearance of other persons. Hamilton v.State, 281 Ala. 448, 203 So.2d 684.
Objection to a prosecutor's question, which came after the witness's answer, was too late. Miller v. State, 52 Ala. App. 525, 294 So.2d 774; Hollis v. State, 37 Ala. App. 453,70 So.2d 279; Chambers v. State, 31 Ala. App. 269, 15 So.2d 742; Lucky v.State, 50 Ala. App. 324, 278 So.2d 772.
The statement made by appellant to the officers who first arrived to investigate the stabbing to the effect that she wished she had killed the deceased was properly admitted as a "spontaneous exclamation." The officers had not addressed a single remark or question to appellant when she made this statement. Veith v. State, 48 Ala. App. 688, 267 So.2d 480;Moore v. State, 54 Ala. App. 22, 304 So.2d 263; Osner v. State,54 Ala. App. 520, 310 So.2d 241.
In the hearing on the motion for a new trial appellant offered to show by the foreman of the jury that she was of the opinion that a defendant in a criminal case, if convicted and sentenced to ten years, would be entitled to a parole at an earlier date than a defendant who was sentenced to five years. The State objected to such testimony and the Court sustained the objection. The Court properly sustained the State's objection.
The length of time a prisoner must serve on the sentence imposed before he is entitled to consideration for a parole is not a matter for the jury's consideration. McCray v. State,261 Ala. 275, 74 So.2d 491; Kendrick v. State, 55 Ala. App. 11,312 So.2d 583.
Had the jury made inquiry of the Court concerning the length of time a prisoner must serve before he could be considered for a parole and the Court responded thereto it would have been error to reverse. Lawley v. State, 264 Ala. 283, 87 So.2d 433;Robinson v. State, Ala.Cr.App., 335 So.2d 420, ms. released May 18, 1976.
It is the general rule in Alabama that a juror may not testify to an occurrence in the jury room amongst themselves for the purpose of impeaching their verdict. 1 McElroy, "The Law of Evidence in Alabama," Sec. 94.06; Fox v. State,49 Ala. App. 204, 269 So.2d 917.
The weight and credence given the testimony of the accused as to the issue of self-defense is a question for the jury. Moorev. State, 54 Ala. App. 22, 304 So.2d 263; Kemp v. State,278 Ala. 637, 179 So.2d 762.
The oral charge of the Court to the jury was full and complete on all phases of this case. The judge charged the jury on all four degrees of homicide and the law of self-defense and stated that appellant being in her own home at the time of the homicide, was under no duty to retreat. He also charged the jury that an attack with a stick may be sufficient to justify acting in self-defense. The judge also charged the jury that the relative size and strength of the *Page 1354 
accused and the deceased were proper considerations in determining whether there was reasonable apprehension of danger and that the danger could be real or apparent so as to create a reasonable belief by the accused in the bona fide necessity for taking the life of the deceased in order to save her own.
There were a number of refused charges and we have considered each of them in the light of the Court's oral charge and find the refused charges, stating correct principles of law, were fully, substantially and adequately covered by the excellent oral charge. Title 7, Section 273, Code of Alabama 1940.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur except CATES, P.J., not sitting.