Appellant was convicted of robbery and sentenced to imprisonment in the penitentiary for forty-five years.
 I
On August 28, 1975, the victim, Arlene Fletcher, answered the front doorbell to her home. She was at that time confronted by a lone male with a pistol. She was then forced back inside her home and later tied up. The victim described the man as a black male with a long face, with a beard and sideburns. She described the clothing of the man to be a white T-shirt, white cloth hat, white pants with a big rip in the seat, tennis shoes, and a handkerchief over his face. This man then took numerous household items including radios, Brut shaving lotion, three watches, a ring, pocket knife, clothing, sheets, pillow cases, tools, small appliances, coins, a roll of carpet and other items. The robber placed these items in an orange or red Volkswagen which was parked by the house, and drove away. This all took place between the hours of 8:00 A.M. to 11:00 A.M.
The appellant, Wash Elliott, was arrested at 8:00 o'clock P.M. on the evening of September 2, 1975. On the morning of September 3, 1975, at 1:30 A.M. Officer Harold Locke testified that he advised the appellant of his rights and took a voluntary statement from him at that time in the presence of Sergeant James Wachob at the *Page 485 
police station. This statement was an oral conversation, on a tape recorder, which was later transcribed and read by Officer Locke while testifying in the course of the trial.
The appellant, Wash Elliott, was indicted on November 7, 1975. On November 21, 1975, the court appointed counsel for the appellant and he was arraigned and plead not guilty on the same date. The appellant was tried and found guilty on March 9, 1976.
In the course of the trial, numerous witnesses were called by the State. These witnesses made identification of the appellant, Wash Elliott, the red Volkswagen, and certain items taken from the home of the victim. There was considerable evidence linking the appellant, Wash Elliott, with the red Volkswagen and the items taken from the victim's home, as well as the physical identification of the appellant, Wash Elliott. The only witness for the defense was the appellant, Wash Elliott, who testified only on voir dire out of the presence of the jury. The court need make no further reference as to the testimony of witnesses other than that of Officer Harold Locke and the appellant, Wash Elliott, as their testimony and the evidence involved go to the issue raised by this appeal.
 II
The only claim of error in this case is that the Court erred in admitting into evidence a statement made by the appellant, Wash Elliott, while in custody. The State takes the position that the statement was voluntarily made by the appellant, Wash Elliott, after knowingly and intelligently waiving those rights accorded to him by the Constitution.
We are cited to the following cases by the appellant: Mirandav. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694;Otinger v. State, 53 Ala. App. 287, 229 So.2d 333; Womack v.State, 281 Ala. 499, 205 So.2d 579; Blackburn v. Alabama,361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242; Townsend v. Sain,372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770; Beecher v. State,288 Ala. 1, 256 So.2d 154.
The appellee has cited the following cases: Botsford v.State, 54 Ala. App. 482, 309 So.2d 835; Davidson v. State,48 Ala. App. 446, 265 So.2d 888; Kendrick v. State, 55 Ala. App. 11,312 So.2d 583; McNair v. State, 50 Ala. App. 465, 280 So.2d 171;Womack v. State, 281 Ala. App. 499, 205 So.2d 579.
The cases cited by the appellant set out the well-recognized rule that for a confession to be admissible in evidence, it must be purely voluntary — that all extrajudicial confessions are prima facie involuntary and can be rendered admissible only by showing that they are voluntary and not restrained, or, in other words, free from influence of any fear or hope, applied to the prisoner's mind by a third person. That the true test is whether, under all the surrounding circumstances, they have been induced by a threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor. Womack v. State, 281 Ala. 499,205 So.2d 579.
The appellant argues that Wash Elliott requested an attorney but that this request was ignored by the police, and that the police coerced him until he waived his right to have an attorney and that any statement thereafter given by him was not voluntary and of his own free will as required in Miranda v.Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.
This Court well recognizes that the duty of whether a confession is voluntary rests first, upon the State to show that it is voluntary, Otinger v. State, 53 Ala. App. 287,229 So.2d 333; and that the trial Court has the duty to determine whether the confession was voluntary, Beecher v. State,288 Ala. 1, 256 So.2d 154; Otinger v. State, 53 Ala. App. 287,229 So.2d 333; Botsford v. State, 54 Ala. App. 482, 309 So.2d 835;Kendrick v. State, 55 Ala. App. 11, 312 So.2d 583.
Before this Court is the sole ground of error that the trial judge erred in his finding that the statement given by Wash Elliott to Officer Locke at the police station *Page 486 
while in custody was a voluntary statement. We must judge the voluntariness of the statement under the evidence that was before the trial judge. We can only read the record; the trial judge had the benefit of observing the witnesses, Harold Locke and Wash Elliott, and hearing their testimony.
Officer Harold Locke, who made the arrest of the appellant, Wash Elliott, testified on direct examination as follows:
 Q. Now as you continued your investigation, did you interview Wash Elliott?
A. Yes, sir.
Q. Where did you interview him?
A. CID.
Q. Dothan Police Department?
A. Yes, sir.
Q. Dothan, Alabama?
A. Yes, sir.
Q. And was anybody else present?
A. Yes, sir.
Q. When was this interview?
A. It was 1:29 A.M. September 3, 1975.
Q. Who was present?
 A. Myself and Sergeant James Wachob and Defendant Wash Elliott.
 Q. At the time you commenced this interview, did you advise him of his constitutional rights?
A. Yes, sir.
Q. What rights did you advise him of?
 A. Advised him he had the right to remain silent, anything he said would be used against him in Court. He had the right to talk to a lawyer for advice before we asked him any questions. And, he could have him with him during the questioning. If he could not afford to hire one, one would be appointed for him before any questioning. If he decided to answer the questions without a lawyer present, he still had the right to stop answering at any time. And, he had also the right to stop answering at any time until he talked to a lawyer.
 Q. After you gave him this advice, did you ask him whether or not he understood?
A. Yes.
Q. Did he respond to that?
A. He said he did.
 Q. And did you at that time or anybody else in your presence offer him any reward, threaten him in any way, give him any inducement or coerce him or do anything to him to get him to make a statement?
A. No, sir. We did not.
Q. Did he make a voluntary statement at that time?
A. Yes, sir.
Q. How was that taken down?
A. In oral conversation, on a tape recorder.
Q. And you asked the questions?
A. Yes, sir.
Q. And he answered them?
A. Yes, sir.
 Q. Did you question him concerning an incident at Arlene Fletcher's house out on Denton Street?
At that time the attorney for the defendant (appellant here) objected and on request from Court stated his grounds for objection to be, "Your Honor, we object to the police officer reading the statement until we make a proper determination of the voluntariness of the statement concerned."
The jury was then excused and out of the presence of the jury, on voir dire, the attorney for the defendant (appellant here) examined the witness, Harold Locke, who testified that the interrogation lasted approximately thirty minutes, that it was in the presence of Sergeant James Wachob, that Wash Elliott did not express a desire to have a lawyer, that he or no one else abused or threatened Wash Elliott, that he was armed in the course of the interrogation but that the weapon was not in sight, that no inducement or promises were made to Wash Elliott, that Wash Elliott signed the waiver of rights form, that Wash Elliott had the intelligence to understand the meaning and effect of a confession, and that the statement *Page 487 
of Wash Elliott was voluntarily made without any fear or physical abuse.
Next called was the defendant, Wash Elliott (appellant here), and out of the presence of the jury, was examined by his attorney, with his testimony being in substance that he was arrested and threatened, that he was taken upstairs at the station, that papers were made out. He said he told them yeah, he wanted a lawyer, that they said you are trying to get funny and slapped the side of his head, that one officer took a rifle and threatened to use the butt of it on him, that they offered to make it light on him if he talked, otherwise would send him off for a long time, said he denied knowing about the robberies, that the police offered not to charge him with some crimes if he made a statement, that they told him what to say on the tape, that the interrogations took place every day for about three weeks, that they took him out behind a church and threatened to shoot him, that they tried to make him run so they could shoot him, that they slapped him until he gave a statement.
Following the examination of Wash Elliott, Officer Harold Locke was recalled and examined out of the presence of the jury by the attorney for the State, at which time he testified in substance, that no one slapped the appellant, that no one threatened him with a rifle butt, that no promises were made to go light on him or charge him with a third robbery, that the interrogations did not go on for three weeks, and that no one took Wash Elliott out behind a church and threatened to shoot him and tried to get him to run.
No further testimony was taken outside the presence of the jury. The record does not show that any further objection was made to the introduction of the statement into evidence. There was no motion made at that time to suppress the statement. The jury was returned to the jury box. The direct examination of Officer Locke continued, at which time he read the transcribed tape recording of Wash Elliott's confession into evidence.
This Court will not go into the question of whether or not the appellant should have made a further objection or motion to suppress following the examination of the two witnesses out of the presence of the jury, as the appellee makes no point of this, but will look to the sole issue presented on appeal.
We find no error on the part of the trial Court in admitting the statement in evidence.
The trial Court heard the testimony. The duty to determine whether or not the statement was a voluntary statement was upon him. Testimony was taken by the trial Court out of the presence of the jury and the statement admitted later into evidence. The trial Court had the opportunity to weigh the testimony.
The evidence was in conflict. The trial judge had the duty to resolve the conflict and this he did.
The Court has previously recognized the fact that it is not unusual for the voluntariness inquiry to present conflicting evidence. Edgil v. State, 36 Ala. App. 379, 56 So.2d 677.
If trial Court finds on conflicting evidence that confession was voluntarily made, such finding will not be disturbed on appeal unless the appellate court is convinced that the conclusion is palpably contrary to the weight of the evidence.Botsford v. State, 54 Ala. App. 482, 309 So.2d 835. Even where there is credible testimony to the contrary, if evidence is fairly capable of supporting inference that rules of freedom and voluntariness were observed with respect to confession, ruling of trial Court need only be supported by substantial evidence and not to a moral certainty. McNair v. State, 50 Ala. App. 465,280 So.2d 171.
 III
We have considered the entire record under Code 1940, T. 15, Sec. 389. From this examination, we conclude that error is not made to appear, and that the judgment of conviction is therefore due to be affirmed. *Page 488 
The foregoing opinion was prepared by Honorable JOHN N. BRYAN, Jr., Circuit Judge, temporarily on duty on the Court pursuant to subsection (4) of Sec. 38, T. 13, Code 1940, as amended; the Court has adopted his opinion as its own.
The judgment below is hereby
AFFIRMED.
All the Judges concur except CATES, P.J., not sitting.