CLIFFORD A. WILLIAMS, Appellant, v. STATE OF DELAWARE, Appellee.

*(February* 4, 1963)

SOUTHERLAND, C. J., and WOLCOTT and TERRY, JJ., sitting.

*David Snellenburg, II,* of Killoran & Van Brunt, for appellant.

*Charles L. Paruszewski,* Deputy Atty. Gen., for appellee.

Supreme Court of Delaware, No. 56-1962.

SOUTHERLAND, Chief Justice.

On December 6, 1959 the premises at 303 Delaware Avenue, Wilmington, occupied by "The House of Diamonds", a jewelry store, was burgled and jewelry of substantial value was stolen. On December 8, 1960 three men, Clifford A. Williams (the appellant), Allison Williams, his brother, and Edward Brennan were indicted for the burglary. Motions for separate trials were filed and denied.

Upon trial, the jury found Clifford Williams guilty and disagreed as to Allison Williams. Brennan was granted a severance before verdict. On a second trial Allison Williams was convicted.

1.   Appellant's principal contention here is that admissions of

guilt by his co-defendant, Allison Williams, were improperly admitted against him. The pertinent facts are these:

A considerable time after the burglary the police arrested Allison Williams. While in their custody he made various incriminating statements. He also went with them to New Jersey, where he arranged with confederate—"Joe"—for the return of part of the stolen property.

Clifford Williams was ascertained to be in Florida and was apparently arrested on a fugitive warrant.

On January 7, 1960, two police officers drove to Miami, Florida, with Allison Williams. Clifford Williams agreed to return to Wilmington. On the way back he made several incriminating admissions.

At the trial the admissions of both defendants were introduced in evidence without objection. The court properly charged the jury that an admission was evidence only against the defendant who made it and is not evidence against other defendants who were not present when the admission was made. No special charge on adoptive admissions appears to have been requested.

These admissions, if properly before the jury, were quite sufficient to justify the conviction. But the contention is now made that they were improperly obtained, because the police made promises of favorable treatment. The facts respecting such promises were brought out at the second trial of Allison Williams.

First, his bail was reduced, apparently as a result of his offer to help recover the jewels.

Second, he was promised, in return for co-operation, that he would not be tried on a charge of larceny. This promise was made January 16. The trial court instructed the jury that no statement of the defendant after January 16 could be recieved against him.

Clifford Williams now contends that at his trial the police

officers concealed the facts respecting these promises, and that this concealment prejudiced him, because Allison's admissions must have had substantial influence with the jury. In that case, says appellant, his conviction cannot stand, even though his own admissions standing alone, would sustain it. *Fiswick v. United States,* 329 U.S. 211, 218, 67 S. ct. 224, 228, 91 L.Ed. 196. Complaint is also made that some of the testimony of the police at the second trial contradicted testimony at the first trial, and that appellant was again prejudiced.

We do not reach the question arising out of these contentions. Appellant has mistaken his remedy. The error complained of does not appear in the record of his conviction. It is based on a post-conviction event, and the post-conviction remedy of a petition under Rule 35(a) of the Rules of Criminal Procedure, *Del. C.* Ann. Must be resorted to. *Cf. Curran v. Woolley,* 9 Terry 382, 48 Del. 382, 104 A.2d 771. This is not a mere procedural matter. The error complained of has never been presented to the trial court. Appellant is seeking to raise in this Court a question that must initially be dealt with by the Superior Court.

2. Appellant claims that he was prejudiced by a newspaper article published during the trial.

The article purported to relate Allison Williams' testiomony, and set forth, as part of it, the following:

"He [Allison Williams] said he went along with the police officers to Miami to see his brother Clifford who was held there as a fugitive and who had been wounded by police in the same burglary that took Luggi's life." (Wilmington Morning News, Mar. 31, 1961, p. 3.)

Luggi had been identified by name as a participant in the House of Diamonds burglary.

Allison Williams had testified that his brother was held on a fugitive warrant, but he had not testified that his brother had been wounded in the Luggi burglary. The article was wrong. It was especially improper, because the trial court had been solicitous in keeping from

the jury testimony of this sort. It may be surmised that the reporter had gathered his information from remarks outside of the presence of the jury.

Appellant's counsel called attention to the article and moved for a mistrial. The court inquired of the jury whether any of them had read it. Two jurors replied that they had read the part of the article appearing on the first page. The prejudicial part of the statement was on page 3. Cautioning the jurors not to read the article on page 3, the court denied the motion. Counsel requested leave to examine the jurors on the voir dire. The trial judge said: "I am not sure that I will permit you to go any further." Upon the court reiterating that the matter was not on the front page, counsel did not press his request.

We think that these rulings were an exercise of the trial judge's discretion. They were not arbitrary, as counsel assert. Moreover, counsel's failure to press the matter throws considerable doubt on the importance of the incident. The court had not positively ruled, and if counsel had thought the matter important, he should have pressed it.

We find no error in the record, and the judgement is affirmed; without prejudice, however, to appellant's right to seek relief under Rule 35(a) in respect of the claimed after-discovered errors in the admission of testimony.