**Leroy L. SMITH, Defendant Below, Appellant,**

**v.**

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Feb. 15, 1974.

21

Richard M. Baumeister, Asst. Public Defender, for appellant.

Joseph A. Hurley, Deputy Atty. Gen. for appellee.

HERRMANN, Chief Justice, CAREY and DUFFY, Associate Justices, sitting.

DUFFY, Justice:

Defendant was convicted of rape and appeals on three grounds.

I

First, defendant argues that he was denied pretrial discovery in violation of Superior Court Criminal Rule 16,[1] Del.C.Ann.

■ Prior to trial, defendant requested "written or recorded (in any form whatsoever) statements or confessions" made by defendant; the State answered by saying that none existed. At trial, however, testimony indicated that defendant had made certain incriminating statements to his father who subsequently related them to the police. Sometime thereafter a police memorandum was made, paraphrasing the substance of what the father had said. Over defendant's objection, a police officer testified at trial to the incriminating statements related to him by the father.[2] Defendant contends that the memorandum was discoverable under the Rule and, since it was not produced by the State prior to trial, the Trial Judge should not have permitted the police officer to testify as to what the father told him.

■ The issue is controlled by our decision in Ray v. State, Del.Supr., 262 A.2d 643 (1970). There, we held that notes made by a police officer based upon oral statements to him by defendant were not within the purview of Rule 16(a). Here, defendant's statement was made, not to the police but to his father; and the notes were based upon what the father told a police officer. Under *Ray* a defendant cannot discover notes which reflect a police officer's recollection of a conversation with him and, *a fortiori,* he cannot compel discovery of notes which reflect an officer's recollection of a conversation with a third person.

We hold that the oral statement made by defendant to his father, although reduced to paraphrase form in a police memorandum, was not discoverable under Rule 16(a).

II

Second, defendant argues that he was prejudiced by failure of the Trial Judge to instruct the jury not to read news accounts of the trial. At the end of the first day of trial the Judge admonished the jury not to discuss the case with anyone but said nothing about reading newspaper reports. When trial began next day defense counsel brought to the Court's attention a report in a local newspaper (the *Morning News*) about the trial which contained a reference to defendant's prior criminal record, including a four-year sentence for conviction of assault with intent to rape. Defense counsel requested the Court to individually examine each juror on *voir dire* to determine whether the article had been read by the jurors or discussed by them. The Court denied the request but conducted a *voir dire* of the panel collectively. The examination revealed that one juror had

---

1. Rule 16(a) states in part:
    "(a) Defendant's Statements; Reports of Examinations and Tests; Defendant's Grand Jury Testimony. Upon motion of a defendant the court may order the Attorney General to permit the defendant to inspect and copy or photograph any relevant (1) written or recorded statements or confessions made by the defendant, or a co-defendant (whether or not charged as a principal, accomplice or accessory in the same or in a separate proceeding), or copies thereof, which are known by the Attorney General to be within the possession, custody or control of the State, . . . ."

2. 11 Del.C. § 3509 provides:
    "(a) In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value.
    (b) The rule in subsection (a) of this section shall apply regardless of whether the witness' in-court testimony is consistent with the prior statement or not. The rule shall likewise apply with or without a showing of surprise by the introducing party."

read the report but had not discussed it with any other juror. That juror was dismissed and replaced by an alternate.

Defendant makes two arguments based upon these events: he says that reversible error occurred when the Court dismissed the jury at the end of the first day without an admonition as to news accounts of the trial, and, he continues, the Judge compounded the error by failing to conduct a separate examination of each juror.

■ In our view, failure to admonish the jury on a daily basis is not reversible error. When a juror begins service on a panel he is routinely given a copy of A Handbook for Petit Jurors Serving on the Superior Court of the State of Delaware which provides in part:

"Jurors are expected to use all the experience, common sense and common knowledge they possess. But they are not to rely on any private source of information. Thus, they should be careful, during the trial, not to discuss the case at home or elsewhere. A fact that a juror gets from a private source may be only half true. It may be a fact that can be explained or perhaps the law of evidence requires it should have no influence on the outcome. At any rate, it is only fair that the parties have a chance to know and explain or answer any facts that matter in the case.

.    .    .    .    .    .

Jurors must not talk about the case with others not on the jury and must not read about the case in the newspapers. They should avoid radio and television broadcasts that might mention the case. The jury's verdict must be based on nothing else but the evidence before the Court.

Breaking these rules is likely to confuse a juror. It may be hard to separate in a person's mind the court testimo-

ny and reports coming from other sources and such outside reports may be biased or inaccurate."

See State v. Halko, Del.Super., 193 A.2d 817 (1963). The Court, counsel and the litigants are entitled to assume that jurors will follow these instructions, including those pertaining to newspapers; if any doubt is raised about the validity of that assumption the Court should then make an independent determination of the facts.

■ It is well settled that the conduct of a trial is largely within the discretion of the Trial Judge and, within the context of what occurred in this case, we suggest a few guidelines [2A] in the exercise of that discretion: In our view, for the integrity of the trial and in the interests of justice, the Trial Judge should, at the end of each day, caution the trial jury collectively about avoiding accounts of the proceeding which may appear in the news media, including newspapers, radio and television.[3] At the commencement of each new trial day the Court should inquire of the jury, collectively, as to whether any member has in any way been exposed to such accounts; when a juror responds affirmatively the Trial Judge should, out of the presence of the remainder of the jury, inquire into the nature and extent of the exposure. Such inquiry should be made by the Court, not counsel, and may be conducted in chambers.

■ We take occasion to emphasize that fairness, and indeed the integrity of the judicial process, make it imperative that jurors secure information about the case only as a corporate body in the courtroom. Only in that way can knowledge of the case at hand be presented to jurors in accordance with traditional rules of evidence and be tested by the constitutional right of cross-examination. Compare Marshall v. United States, 360 U.S. 310, 79 S.

---

**2A.** Guidelines, as here stated, are not to be considered mandates such as would support assertion of reversible error *per se.*

**3.** The Approved ABA Standards Relating to Fair Trial and Free Press, § 3.5(e), includes suggested cautionary instructions to jurors.

Ct. 1171, 3 L.Ed.2d 1250 (1959). Since our courts are open and media access is ordinarily routine, it is imperative that jurors avoid being influenced by accounts of the proceedings as filtered through third persons, including representatives of the news media. To accomplish that objective a Trial Judge has a wide discretion. Thus he should hear and consider in the privacy of chambers, matters as to which the jury has been excluded, if that be deemed by the Trial Judge necessary to protect the jury from media accounts of such matters. The Court's ultimate ruling on any such matter should, of course, be made in open court. A decision to hear such matters in chambers should be made only after full consideration of the constitutional right to a public trial, Art. 1, § 7, Del.C.Ann., and the requirement that all courts shall be open, Art. 1, § 9. Compare Lecates v. Lecates, Del.Super., 190 A. 294 (1937); see the discussion in 23 C.J.S., Criminal Law § 963.[4]

■ The way in which the Trial Judge conducted the *voir dire* in this case was entirely within his discretion and, absent a showing of abuse, he will not be reversed. We find no abuse in the Court's decision to make the inquiry collectively and not individually. Compare Williams v. State, Del.Supr., 205 A.2d 9 (1963); Smith v. United States, 8 Cir., 236 F.2d 260 (1956), cert. den. 352 U.S. 909, 77 S.Ct. 148, 1 L. Ed.2d 118 (1956); People v. Marino, 95 Ill.App.2d 369, 238 N.E.2d 245 (1968), aff'd 44 Ill.2d 562, 256 N.E.2d 770 (1970); State v. Schlagel, Mo.Supr., 490 S.W.2d 81 (1973).

### III

Finally, we consider an argument based upon the Trial Judge's instructions to the jury in answer to a question asked after deliberation had begun.

After retiring the jury sent to the Court a note asking, ". . . could you please clarify in terms of years what life imprisonment means?" The Court reviewed the matter with counsel and then answered the question as follows:

"I will just read portions of a statute, which is 11 Delaware Code, Section 4346. It merely says that for all purposes, a person sentenced to imprisonment for life shall be considered as having been sentenced to a fixed term of forty-five years.

Let me ask you this: Are there any further questions? If there are, I pass

---

4. Section 3.5(d) of the ABA Standards, supra, states:
   "(d) Exclusion of the public from hearings or arguments outside the presence of the jury.
   If the jury is not sequestered, the defendant shall be permitted to move that the public be excluded from any portion of the trial that takes place outside the presence of the jury on the ground that dissemination of evidence or argument adduced at the hearing is likely to interfere with the defendant's right to a fair trial by an impartial jury. The motion shall be granted unless it is determined that there is no substantial likelihood of such interference. With the consent of the defendant, the court may take such action on its own motion or at the suggestion of the prosecution. Whenever such action is taken, a complete record of the proceedings from which the public has been excluded shall be kept and shall be made available to the public following the comple-

tion of the trial. Nothing in this recommendation is intended to interfere with the power of the court, in connection with any hearing held outside the presence of the jury, to caution those present that dissemination of specified information by any means of public communication, prior to the rendering of the verdict, may jeopardize the right to a fair trial by an impartial jury."
The Commentary includes the following:
   "Subsection (d) of section 3.5 provides that hearings during trial held outside the presence of the jury shall be closed when there is a substantial likelihood that dissemination of evidence or argument adduced at the hearing will interfere with the defendant's right to a fair trial. There are a number of cases in which such dissemination has raised serious questions of possible prejudice, and the exclusion of the public from the courtroom, or the holding of arguments at the side-bar or in chambers, can avoid this danger."

you this pad and you can write them down."

In response to one such question ("Would a minimum sentence, say, of three years mean the person would have to serve the whole three years?"), the Court stated:

"You are asking about the minimum sentence. That's the minimum, not the maximum, a minimum of three years. If we sentence to a minimum of three years, as far as we are concerned, that would be the sentence. But this does not take into account procedures subsequent to sentencing such as what a Pardon Board action might do or Parole Board action might do or what the prison may do in reduction of sentence in accordance with good time served with which this Court has no connection. In other words, our function is to give the sentence. What happens after our function is really—It's the concern of the Court, but it is not our jurisdiction, you see. Is there anything else?

Before verdict defendant moved for a mistrial on the ground that reference to pardon, parole or other post-conviction remedy was improper. The motion was denied and the jury returned a verdict of guilty of rape, without a recommendation of mercy. The sentence of life imprisonment, mandatory without a mercy recommendation,[5] was imposed. Defendant now argues that it was reversible error for the Trial Court to comment about the possiblity of pardon or parole. We agree.

The jury's function is to determine guilt or innocence and, in this case, if guilt be found, to recommend mercy or not.

In a majority of jurisdictions it is not within the scope of a jury's duty to consider the possibility of post-conviction

clemency. See 35 A.L.R.2d 769 and 12 A.L.R.3d 832. We know of no dissent from that principle in Delaware law or practice and we affirm it here.

Basically, at least two evils may occur as a result of an instruction concerning possible pardon, parole or probation. First, such comment to a jury may "becloud the issue before them and open the way to a compromise verdict." Lovely v. United States, 4 Cir., 169 F.2d 386 (1948). That is, knowledge on the part of a jury that there is possible review by other governmental authorities may cause that jury to avoid its responsibility and compromise on the question of guilt. See Commonwealth v. Mills, 350 Pa. 478, 39 A.2d 572 (1944); People v. Morse, 60 Cal.2d 631, 36 Cal. Rptr. 201, 388 P.2d 33 (1964). Of course, it can be said that such procedures are in a general sense matters of common knowledge but, manifestly, any comment by the Court relates them to the case at hand and draws the jury's attention away from performance of its proper task. And such comment may imply to a jury that if it mistakenly convicts an innocent man, or mistakenly fails to recommend mercy, the error may be corrected by others; under such circumstances a conviction is more likely, and a recommendation of mercy is less likely.

Second, relying upon the possibility of parole, probation or the like, a jury may be tempted to compensate for what it considers future leniency or release, and deal with the case more severely than it might otherwise. Clearly, if post-conviction clemency upon which a jury has relied does not materialize, then a defendant is left with a verdict that the jury did not intend. This point has received much consideration in decisions dealing with the issue. See, e. g., Lawley v. State, 264 Ala. 283, 87 So.2d 433 (1956); Thompson v.

---

5.  11 Del.C. § 781 (now repealed) provided:
    "Whoever commits the crime of rape;

    .     .     .     .     .

    Shall be guilty of felony and shall suffer life imprisonment. If the jury at the

time of rendering their verdict recommends the defendant to mercy, the court may impose a sentence for any period not less than 3 years, instead of life imprisonment."

State, 203 Ga. 416, 47 S.E.2d 54 (1948); Porter v. State, 177 Tenn. 515, 151 S.W.2d 171 (1941); Jones v. Commonwealth, 194 Va. 273, 72 S.E.2d 693 (1952). Our system of justice should not permit this sort of speculation and a jury's possible compensation therefor.

■ We hold that it is impermissible for a jury to consider and attempt to evaluate the uncertain effects of potential post-conviction remedies. Such conjecture is not within the traditional perimeters of a jury's function and has no place in our system of justice in this State. Such conjecture, it is reasonable to believe, may have made the difference, in the instant case, between a comparatively minor prison sentence which may have followed a mercy recommendation and the life imprisonment which is mandatory on the present verdict without such recommendation.

■ When confronted with a request of the kind made here, the Court should instruct the jury that its duty is to decide guilt or innocence only (and, in appropriate instances, to either recommend mercy or not); in no circumstance should the jury concern itself with what may occur after verdict.

■ It is with reluctance that we reverse the judgment below, and in so doing we emphasize that guilt or innocence of the charge of rape is not the determinative issue on which the ruling is made. Our decision is based entirely on the Court's comment to the jury about pardon and parole, and possible consideration thereof by the jury when it deliberated whether or not to recommend mercy. It is clear from the record that the Trial Judge realized the significance of what he had said and it is regrettable that counsel were unable to agree on further instructions which might have rendered the error harmless. But, taking the record as it is, we are unable to say the error is harmless beyond a reasonable doubt, which is the test fixed by the Supreme Court in Chapman v. California,

386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Compare Mealey v. Delaware, 3 Cir., 489 F.2d 993 (1973).

\* \* \* \* \* \*

Reversed and remanded for a new trial.