STATE OF WEST VIRGINIA

*v.*

ROBERT LINDSEY

(No. 13701)

Decided April 5, 1977.

*Robert H. Burford, William C. Beatty, and Thomas H. Gilpin,* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Richard E. Hardison,* Deputy Attorney General, *Anne Little,* Assistant Attorney General, for defendant in error.

CAPLAN, CHIEF JUSTICE:

This is an appeal from a final order of the Circuit Court of Cabell County wherein that court denied an appeal from a judgment of the then Common Pleas Court of said county. The defendant was indicted at the January Term, 1972, of the then Common Pleas Court, on a charge of murder. Upon his plea of not guilty, he was tried before a jury and a verdict of guilty of murder of the first degree was returned. This appeal resulted.

The defendant assigns as error the action of the trial court (1) in instructing the jury as to the defendant's right to parole after conviction; (2) in orally instructing the jury; and, (3) in permitting prosecutorial comment, allegedly referring to the failure of the accused to testify.

The facts of the case as they relate to the assignments of error may be succinctly stated. All of the principal assignments relate to matters that occurred subsequent to the presentation of testimony by the state and defendant. The assistant prosecuting attorney during closing argument related to the jury his recollection of the testimony of some of the state's witnesses. He then asked the question, "Do you believe the testimony the State had produced in this case? The best testimony is from the very lips of the defendant himself who in a moment of his activity related—." Objection was interposed by defense counsel at this point and the court overruled the objection, permitting the state's attorney to proceed. He then recited what events he contended were related to certain witnesses by the defendant and concluded that these witnesses could not possibly have known of these events except from the defendant. The state's attorney then made the statement that "A man who is charged with guilt will deny that guilt if he is innocent." The purport of this argument was that the defendant did not deny the crime to these witnesses and that if he were innocent he would have done so.

After this closing argument by the assistant prosecutor, the court proceeded to tell the jury orally that there

were three possible verdicts that could be returned. He listed them as follows: "We the Jury agree and find the Defendant, Robert Lindsey, not guilty as charged in Indictment No. 8774, or We the Jury agree and find the Defendant, Robert Lindsey, guilty of murder in the first degree as charged in Indictment No. 8774, or We the Jury agree and find the Defendant, Robert Lindsey, guilty of murder in the first degree as charged in Indictment No. 8774 and recommend mercy and under the last verdict, Ladies and Gentlemen of the Jury, if you so find the defendant, Robert Lindsey, guilty and you recommend mercy, he will be entitled to parole under the applicable statute of the State of West Virginia."

Neither party had offered an instruction indicating the possible verdicts. After a short conference at the bench, the jury was directed to retire and consider of its verdict. After approximately thirty-five minutes, the jury indicated that it had a question for the court. The jury was returned to the courtroom where the court attempted to answer the questions propounded. The questions propounded concerned the defendant's right to parole if certain verdicts were returned. The court instructed the jury that it was its function to "determine the facts based upon the sworn testimony that you have heard from the witness stand and based upon also the evidence that has been submitted ... The punishment related to this or any other offense is the function of the Court ...." The court then again proceeded to inform the jury that there were only three possible verdicts that could be returned in the case. It then said, "If the jury should come back with a verdict of guilty with a recommendation of mercy that means that the accused will be subject to parole under the applicable statutes of this State." The jury again retired and less than thirty minutes later returned with a verdict of first degree murder without recommendation.

The trial court overruled defendant's motion to set aside the verdict and grant him a new trial and, on appeal, the Circuit Court of Cabell County affirmed the action of the trial court. This Court, upon petition,

granted defendant a writ of error and for reasons to be hereinafter stated, now reverse the action of the circuit court, set aside the verdict and grant the defendant a new trial.

We consider, first, the defendant's assignment of error relating to the court's alleged erroneous instruction to the jury as to the defendant's parole rights. We have been cited to no West Virginia authority, nor have we found any that would resolve this question.

A review of the authorities of other jurisdictions, however, indicates that the majority thereof hold it to be prejudicial error for the court to tell a jury that a prison sentence may be reduced and the prisoner released as a result of parole or pardon. *See,* Annotation, 12 A.L.R.3d 832.

In *Jones v. Commonwealth,* 194 Va. 273, 72 S.E.2d 693 (1952), the defendant was found guilty of murder of the first degree and was sentenced to death. After the jury had retired to consider of its verdict, it came back into court and inquired as to whether or not it would have any assurance that the defendant would not be released if it fixed his punishment at life imprisonment or a long term of years. The court informed the jury that it could not give that assurance; that that would be in the hands of the executive branch of government. One of defense counsel then inquired of the court, privately, if it would not be proper to further advise the jury that persons sentenced to life imprisonment are not eligible for parole. The court answered in the negative. The jury returned to the jury room for further deliberations and after twenty to twenty-five minutes, returned with a verdict of murder in the first degree and imposed the death penalty. The appeals court held that it was reversible error for the trial court to decline to inform the jury, under the circumstances of the case, that persons sentenced to life imprisonment are not eligible for parole. The Virginia court said that proper response to any inquiry of the jury relating to parole or probation was to inform or instruct the jury that it was the duty of the

jury, if it finds the accused guilty, to impose such punishment as it considered to be just under the evidence and within the limits stated in the court's instructions and that it must not concern itself with what may thereafter happen.

In *Strickland v. State*, 209 Ga. 65, 70 S.E.2d 710 (1952), the defendant was convicted of murder without recommendation and was sentenced to death by electrocution. The foreman of the jury, after the jury had retired to consider of its verdict, inquired of the court what the probability was of one sentenced to life imprisonment being released on parole after serving seven years. The trial court in answer to this inquiry, instructed the jury that "... the rule there is that, when a prisoner is given life imprisonment, he becomes entitled to a parole after seven years; after he has served seven years he is entitled to parole. Now, whether he gets it or not is a question for determination by the Parole Board; I have nothing to do with that, if he gets life imprisonment, he is sentenced to life imprisonment, but whether he serves more than seven years is a question for the Parole Board to determine; they review his record before and after sentence and say whether he should be released ...". Upon appeal it was held that under the circumstances of the case the instruction given by the trial court regarding the inquiry of the foreman was calculated to influence the jury against a recommendation of mercy and the court granted the defendant a new trial.

In *Kendrick v. State*, 55 Ala. App. 11, 312 So.2d 583 (1975) the defendant was convicted of rape and appealed. One of the assignments of error involved the court's instruction given in response to a question presented by the jury after it began deliberations concerning when a person is eligible for parole. The court said that the trial court should not attempt to explain the functions of the pardon or parole board or to explain how it operates but "to inform the jury in no uncertain terms that such matters are not proper for the jury's consideration and that the jury should determine the guilt or innocence of the defendant and the length of his imprisonment based

entirely on the evidence presented to it." The court concluded that the trial court's response was so worded as to convey the idea that the jury in arriving at its verdict should not assume that the defendant would possibly be pardoned or paroled and affirmed the conviction.

In *Smith v. State of Delaware*, ___ Del. ___, 317 A. 2d 20 (1974), the defendant was convicted of rape, without recommendation, and he was sentenced to life imprisonment. One of the grounds of appeal concerned the instruction of the court with respect to a question from the jury, after it had begun its deliberations, as to "what life imprisonment means". The court, after reviewing the matter with counsel, informed the jury that "for all purposes, a person sentenced to imprisonment for life shall be considered as having been sentenced to a fixed term of forty-five years." A further inquiry from the jury as to how much time would be served if a minimum sentence were imposed brought this response from the court: "If we sentence to a minimum of three years, as far as we are concerned, that would be the sentence. But this does not take into account procedures subsequent to sentencing such as what a Pardon Board action might do or Parole Board action might do or what the prison may do in reduction of sentence in accordance with good time served with which this Court has no connection. In other words, our function is to give the sentence. What happens after our function . . . is not our jurisdiction . . . ." The appeals court reversed the trial court "based entirely on the Court's comment to the jury about pardon and parole, and possible consideration thereof by the jury when it deliberated whether or not to recommend mercy."

*People v. Morse*, 60 Cal.2d 631, 36 Cal. Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810 (1964) is perhaps one of the leading cases dealing with the prejudicial effect of a statement or instruction of a court as to the possibility of parole or pardon. The defendant (Morse) was convicted of first degree murder and the jury imposed the death penalty. The trial court had instructed the jury

that in determining whether to impose the death penalty or life imprisonment it could consider "that a defendant sentenced either to death or life imprisonment may be pardoned or have his sentence reduced by the Governor and that if this defendant is sentenced to life imprisonment he may be eligible for parole at the expiration of seven calendar years. A trial judge may also reduce the penalty from death to life imprisonment." The court, in its opinion, confessed that it had previously "opened the door a slight crack" to permit an instruction as to the realistic consequence of a sentence of life imprisonment but that the "various maneuvers have pushed the door so widely ajar that too many confusing elements have entered the courtroom." The court concluded that the instructions as to the judge's and Governor's possible reduction of the death penalty "tend to mislead the jury into assuming that the rendition of the penalty initiates a chain of proceedings by the court and the Governor which will achieve a reweighing of the sentence and possibly produce its nullification." The judgment of the trial court was reversed as to the penalty but affirmed in other respects.

In *Lovely v. United States*, 169 F.2d 386 (4th Cir. 1948) the defendant was charged with rape. Defendant admitted intercourse and the only question was one of force. The jury was instructed that a person sentenced to life imprisonment was eligible to parole after fifteen years. The court, speaking through Parker, Circuit Judge, said; "The jury had nothing to do with the punishment of the defendant ... and to charge as to eligibility for parole after fifteen years was to becloud the issue before them and open the way to a compromise verdict. What they were to decide was whether defendant was guilty or not and, if so, whether he should be given capital punishment."

In summary, the instructions of the trial judge dealing with the possibility of parole foster the dual vice of foisting upon the jury alien issues and concomitantly diluting its own sense of responsibility.

For other cases dealing with the prejudicial effect of the court's instructions concerning the possibility of parole or pardon, *see, Broyles v. Commonwealth*, 267 S.W.2d 73 (Ky. 1964); *State of New Jersey v. White*, 27 N.J. 158, 142 A.2d 65 (1958); *People v. McGautha*, 76 Cal. Rptr. 434, 452 P.2d 650 (1969) *Robinson v. State*, ____ Ala. ____, 335 So.2d 420 (1976); *Commonwealth v. Johnson*, 368 Pa. 139, 81 A.2d 569 (1951); and *Williams v. State*, 191 Tenn. 456, 234 S.W.2d 993 (1950). *See also, Sweed v. State of Texas*, 538 S.W.2d 119 (1970) and *Moore v. State of Texas*, 535 S.W.2d 357 (1976). We are impressed with the reasoning and logic expressed in the above cited cases.

In the instant case we are concerned with the effect on the jury of the court's oral instruction that "if you so find Defendant, Robert Lindsey, guilty and you recommend mercy, he will be *entitled* to parole under the applicable statute of the State of West Virginia." (emphasis supplied) Later, in response to another question from the jury, after it had begun deliberations, the court further told the jury that "If the jury should come back with a verdict of guilty with a recommendation of mercy, that means that the accused will be *subject* to parole under the applicable statutes of this State." (emphasis supplied)

The jury was obviously concerned as to the possible punishment that might be inflicted upon the defendant. It is equally obvious that the jury wanted information as to the effect of a mercy recommendation. The court first informed the jury that if it "recommend mercy", the defendant would be "entitled" to parole under the applicable statute and later that defendant would be "subject" to parole under the applicable statute. One convicted of a crime and sentenced to the penitentiary is never *entitled* to parole. *W. Va.* Code, 1931, 62-12-13a, as amended. He is eligible to be considered for parole.

The jury is the trier of the facts and "there is no presumption that they are familiar with the law." *State v. Loveless*, 139 W. Va. 454, 80 S.E.2d 442 (1954). Had the jury been cognizant of the law, perhaps the instruction

of the court would have been understood, for under the applicable statutes the parole rights are set forth. We cannot presume that the jury knows the law and the instruction given to it, being extremely misleading, doubtless induced that jury to convict without a mercy recommendation. From the questions propounded by the jury, it is apparent that it was the feeling of the jury that the defendant should not be *entitled* to parole upon conviction and perhaps serve little or no time behind bars. When faced with that possibility, the jury made sure that did not happen. It returned a verdict of guilty without any recommendation.

Many of the cases cited above are cases dealing with possible death penalties. Our state has abolished the death penalty. *W. Va. Code*, 61-11-2, as amended. The greatest punishment that can be meted out by the courts of this state is life imprisonment, which is the sentence imposed upon conviction of murder of the first degree. Such a sentence precludes parole consideration. The jury may, under the provisions of *W. Va. Code*, 62-3-15, as amended, return a verdict of guilty of murder of the first degree with a recommendation of mercy. In that event the defendant must serve a minimum of ten years before he is eligible to be considered for parole. *W. Va. Code*, 62-12-13, as amended. Consequently, in the instant case, had the jury recommended mercy, the defendant could not have been considered for parole until he had served at least ten years. Had the jury been correctly instructed as to the law, would it have returned a verdict of first degree murder without a recommendation of mercy? We do not know, but under the erroneous instruction given by the court, this jury made certain that the defendant would serve time in the penitentiary and in so doing imposed the heaviest penalty allowed by law. We must conclude that such instruction, being inaccurate, misleading and incomplete, operated to the detriment of the defendant and constituted reversible error.

In *State v. Loveless*, 139 W. Va. 454, 80 S.E.2d 442 (1954) capital punishment was then the ultimate penalty for a

first degree murder conviction when no recommendation of mercy was made. The Court in that case held that it was the mandatory duty of the trial court, without request, to instruct the jury that in the event a verdict of guilty of first degree murder was returned, the jury may further find that the accused be punished by confinement in the penitentiary, and that in the absence of such finding, the death sentence must be pronounced by the court. As heretofore stated, capital punishment has been abolished in this state, life imprisonment being the most severe penalty that can be imposed. The decision in *Loveless* is significant. In *Loveless* the court said that the trial court must inform the jury of the effect of its failure to impose confinement in the penitentiary. Here, we hold that the court must inform the jury, should it recommend mercy, the defendant would be eligible for consideration for parole only after he served a minimum of ten years. This Court adheres to and adopts the reasoning of the cases heretofore discussed, where applicable. We hold that it is the duty of the jury to determine the guilt or innocence of the accused and that it is not to concern itself with matters of possible parole. Questions pertaining to parole rights are not germane to the question of guilt or innocence. The jury should be told the consequence of a recommendation of mercy in a case such as the instant one. It is quite possible, in fact probable, that the jury in the instant case would have recommended mercy had they not thought the defendant would then have been entitled to parole. It is for this reason that we reverse the judgment of the Circuit Court of Cabell County and remand the case for the purpose of granting defendant a new trial.

The other assignments of error have been considered by the Court but in view of our decision, we deem it unnecessary to comment in detail on the other assignments. Suffice to say, the state should studiously avoid even the slightest hint as to the defendant's failure to testify. *See, State v. Boyd*, ＿＿ W. Va. ＿＿, 233 S.E.2d 710 (decided March 29, 1977), and *Doyle v. Ohio*, ＿＿ U.S. ＿＿, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976). Also, it is

mandatory, under the provisions of *Code* 56-6-19 that the trial court submit in writing to counsel for each party all instructions it intends to submit to the jury. This is to afford counsel the opportunity to object to the giving or refusal of the proposed instructions. *See, State v. Cutlip*, 131 W. Va. 141, 46 S.E.2d 454 (1948), and *Raines v. Faulkner*, 131 W. Va. 10, 48 S.E.2d 393 (1947).

For the foregoing reasons, the judgment of the Circuit Court of Cabell County is reversed and the case is remanded for the purpose of affording the defendant a new trial.

*Reversed and remanded.*