IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2025 Term

_____

No. 23-86

_____

FILED

June 9, 2025

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent,

v.

GAVIN BLAINE SMITH,
Defendant Below, Petitioner.

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Kenneth Ballard, Judge
Criminal Action No. 22-F-130

VACATED AND REMANDED

_____

Submitted: January 28, 2025
Filed: June 9, 2025

Matthew Brummond, Esq.
Public Defender Services
Appellate Advocacy Division
Charleston, West Virginia
Attorney for the Petitioner

John B. McCuskey, Esq.
Attorney General
Michael R. Williams, Esq.
Solicitor General
Andrea Nease Proper, Esq.
Deputy Attorney General
Office of the Attorney General
Charleston, West Virginia
Attorneys for the Respondent

JUSTICE BUNN delivered the Opinion of the Court.

JUSTICE ARMSTEAD dissents and may write separately.

**SYLLABUS BY THE COURT**

1.    "It is the duty of the jury to determine the guilt or innocence of the accused in accordance with the evidence introduced at the trial and it must not concern itself with matters of possible parole or probation." Syllabus point 1, *State v. Lindsey*, 160 W. Va. 284, 233 S.E.2d 734 (1977).

2.    "Outside the context of cases involving a recommendation of mercy, it is improper for either party to refer to the sentencing possibilities of the trial court should certain verdicts be found or to refer to the ability of the trial court to place a defendant on probation." Syllabus point 7, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

i

**BUNN, Justice:**

Petitioner Gavin Smith appeals his convictions for three counts of first-degree murder, one count of second-degree murder, and one count of using or presenting a firearm during the commission of a felony, all stemming from the shooting deaths of Mr. Smith's stepfather, mother, and two younger brothers. On appeal, Mr. Smith asserts that the circuit court erred by improperly informing the jury that if it convicted him of first-degree murder, the most serious degree of homicide at issue, Mr. Smith would be parole eligible after fifteen years and that he was prejudiced by this error. We agree and find that, under the circumstances of this case, the circuit court committed reversible error when it improperly informed the jury of the penalty and parole possibility for Mr. Smith, who was under the age of eighteen years old at the time of the alleged first-degree murders. Therefore, we vacate Mr. Smith's convictions and the circuit court's sentencing order, and remand for a new trial.

## I.

## FACTUAL AND PROCEDURAL HISTORY

In December 2020, Timothy Saunders, Mr. Smith's grandfather, discovered Mr. Smith's mother, stepfather, and two younger brothers shot to death in their home.[1] Mr.

---

[1] Because we are vacating and remanding for a new trial, we recite the facts from the record of the original trial for purposes of appeal only. We make no further conclusions regarding these facts.

Saunders did not find Mr. Smith at the home and contacted law enforcement. After locating Mr. Smith at the home of his girlfriend's grandmother, law enforcement arrested and charged Mr. Smith in connection with the deaths of his family members. Mr. Smith's girlfriend, Rebecca Walker, was also charged in connection with the deaths. Prior to Mr. Smith's indictment, Ms. Walker entered into a binding plea agreement where she agreed to demand transfer from juvenile proceedings to adult criminal jurisdiction. Upon entry of the transfer order, Ms. Walker would plead guilty to an information charging her with four counts of accessory after the fact to first-degree murder. The State and Ms. Walker agreed "that the appropriate disposition . . . would be a sentence of confinement for two (2) years and six (6) months on each of the four (4) counts, for a maximum period of ten (10) years." The plea agreement also required her "to be completely truthful and cooperate in any proceedings" against Mr. Smith. [2]

Because Mr. Smith was sixteen years old at the time of the alleged murders, the State initially charged him through juvenile proceedings; however, the circuit court later transferred Mr. Smith to adult criminal jurisdiction. In May 2022, a grand jury indicted Mr. Smith on four counts of first-degree murder and four counts of using or presenting a firearm during the commission of a felony. At trial, the State presented evidence from

---

[2] It appears from the record that the court accepted Ms. Walker's binding plea agreement.

multiple witnesses that Mr. Smith shot and killed his family members, including testimony from Ms. Walker regarding her relationship with Mr. Smith and the events of the day of the murders.[3]

During Ms. Walker's testimony, Mr. Smith's counsel cross-examined Ms. Walker regarding her plea agreement with the State. His counsel established that while the State initially charged Ms. Walker with first-degree murder, she eventually entered an agreement that allowed her to plead guilty to four counts of accessory after the fact to first-degree murder. Ms. Walker testified that she understood that she would have faced twenty years in prison with a first-degree murder conviction; however, she clarified later in her testimony that the penalty for first-degree murder is life imprisonment. After Ms. Walker testified regarding the life sentence that she avoided by pleading guilty to lesser charges, the State objected, arguing that the jury was left with the erroneous impression that Mr. Smith would "be locked up for the rest of his life" if he was convicted of first-degree murder. The parties agreed to allow the court to give the jury an instruction to clarify Ms. Walker's testimony after the following exchange occurred outside the hearing of the jury:

> MR. MORRIS [Prosecuting Attorney]: Your Honor, [Mr. Smith's attorney] has now led the jury to believe that Mr. Smith will receive a life sentence if he is convicted of first[-]degree murder.

---

[3] Mr. Smith has not, either below or on appeal, contested that he committed these acts. Instead, his defense at trial focused on asserting that he had not formed the requisite intent to be convicted of first-degree murder.

Under our law, of course, he is eligible for parole because he was a juvenile at the time that the crime was committed. I think that the jury ought to know that. . . .

Now the jury is left with the impression that if they convict [Mr.] Smith that he will spend the rest of his life in prison. That's not necessarily the case.

So[,] we object and we would ask the Court to instruct the jury that . . . because [the] crimes [were] committed by juveniles they get to see the parole board after [fifteen] years.

MR. SULLIVAN [Mr. Smith's Attorney]: I am fine with that.

Once back in the hearing of the jury, the circuit court gave the following instruction:

THE COURT: The Court will instruct the jury with regards to first[-]degree murder with regards to juveniles, juveniles are not subject to being in prison for the rest of their life, they are actually eligible for parole after [fifteen] years. Okay.[4]

(Footnote added). No party objected to the wording of the court's instruction. Mr. Smith's counsel then continued cross-examining Ms. Walker regarding her credibility and the sentence she avoided through her plea agreement which required her to testify against Mr. Smith.

---

[4] When a defendant is convicted of first-degree murder and was less than eighteen years old at the time of the offense, the defendant automatically receives mercy and becomes parole eligible after serving fifteen years. *See* W. Va. Code § 61-11-23, in part ("[A] sentence of life imprisonment without the possibility of parole may not be imposed on a person who: (1) Is convicted of an offense punishable by life imprisonment; and (2) Was less than 18 years of age at the time the offense was committed.").

4

During the jury charge conference after the close of evidence, the State argued that the court's instruction during Ms. Walker's testimony may have confused the jury, and offered an instruction to explain parole eligibility in the context of a first-degree murder conviction when the defendant was under the age of eighteen at the time of the crime:

> MR. MORRIS [The Prosecuting Attorney]: Judge, we're going to offer an instruction to the jury. And I think that it's necessary for the Court to give this instruction. . . .
>
> [The] State was concerned about the jury . . . ,[and] on my objection, was told by the Court that . . . the Defendant was not facing a life sentence, but would be eligible for parole after [fifteen] years. I think that may have confused the jury. . . .
>
> THE COURT: Eligible.
>
> MR. MORRIS [The Prosecuting Attorney]: . . . . We prepared an instruction explaining about parole eligibility and the factors of the parole board would consider before granting parole. I think that would clean the issue up in front of the jury.
>
> Because right now the jury may think that he can only get [fifteen] years for first[-]degree murder, and we're concerned that the jury would be confused about that.
>
> This instruction clearly instructs the jury that [it] is a life sentence, however, because he is a juvenile he would be eligible for parole after [fifteen] years. We propose that instruction be given.

Mr. Smith's counsel objected to this instruction, arguing that "[t]he issue in this instruction is not one that affects the jury's decision on the facts." His counsel further

asserted that parole eligibility was briefly discussed during the trial "to establish . . . the advantage that the State's witness Ms. Walker gained from the dismissal of a murder charge. That was fair for the jury to hear about. But there is no reason to return to it at the time of jury instructions." Finally, Mr. Smith's counsel contended that the jury was "supposed to be considering the facts, not considering [the] sentence" and that this instruction "kind of puts it right out there for them to be thinking about sentences."

The court overruled Mr. Smith's objection and subsequently instructed the jury. The circuit court first briefly described the role of the jury.[5] The court further informed the jury of the life sentence for first-degree murder, the possibility for parole, and the factors the parole board may consider, as follows:

> You're further instructed that if you find the Defendant, Gavin Smith, guilty of First[-]Degree Murder, the Defendant will be confined to the penitentiary of this state for life, and as a juvenile when these subject acts occurred, . . . he will be eligible to be considered for parole after serving a minimum of [fifteen] years of his sentence. The fact that the Defendant is eligible to be considered for parole does not guarantee his release after serving [fifteen] years.

---

[5] The court instructed the jury that

> [i]t is the exclusive duty of the jury to impartially determine the facts of the case as determined by them from all of the evidence. *Your oath as a juror requires you to accept and apply the law as stated in these instructions to the facts determined by you from all of the evidence.* You must not change the law or apply your own ideas of what you think the law should be.

(Emphasis added).

The West Virginia Board of Parole in considering whether the parole should or should not be granted to any inmate, may consider among the following matter, among other matters, the following factors:

Whether the inmate has been found guilty of violating any institutional disciplinary rules, or whether the inmate has participated in institutional education, work or rehabilitative programs, and whether the inmate has previously been on parole or probation and, if so, how the inmate behaved thereon and the circumstances of his parole and probation revocation, and that the sentiment expressed by members of the community and of the criminal justice officials in the area where the crime occurred and in the area where the inmate lived prior to his conviction, if any such expressions are available. The facts and circumstances of the crime. And the demeanor of the inmate during the interview and the attitudes expressed then with regards to his previous criminal behavior and to social moral, and to social morals and laws, and the inmates prior criminal record, if any. And the results of any available physical, mental or psychiatric examination.

The Board shall assess all of these factors together to determine whether, one, the inmate can and will conduct himself in a lawful manner if released; and two, whether release is in the best interest of society.

The Board will not parole an inmate if circumstances of the inmate specifically criminal act merit continued punishment, or other factors not withstanding.

The parties proceeded to closing arguments and the jury retired to deliberate.[6]

The jury convicted Mr. Smith of three counts of first-degree murder, one count of second-

---

[6] During its rebuttal closing argument, the State argued "[b]ecause this young man is a juvenile, if you convicted of first[-]degree murder, it will be a life sentence, but

7

degree murder, and one count of using or presenting a firearm during the commission of a felony.[7] The court sentenced Mr. Smith to three terms of life imprisonment with mercy plus a determinate term of fifty years, all to run consecutively. Mr. Smith appeals from this sentencing order.

## II.

## STANDARD OF REVIEW

When "an objection to a jury instruction is a challenge to a trial court's statement of the legal standard, this Court will exercise *de novo* review." *State v. Guthrie*, 194 W. Va. 657, 671, 461 S.E.2d 163, 177 (1995). Furthermore,

> when an objection to a jury instruction involves the trial court's expression and formulation of the jury charge, this Court will review under an abuse of discretion standard. Therefore, we review jury instructions to determine whether, taken as a whole and in light of the evidence, they mislead the jury or state the law incorrectly to the prejudice of the objecting party. So long as they do not, we review the formulation of the instructions and the choice of language for an abuse of discretion. We will reverse only if the instructions are incorrect as a matter of law or capable of confusing and thereby misleading the jury.

*Id.* at 671-72, 461 S.E.2d at 177-78 (footnote omitted).

---

guess what?" Mr. Smith objected to the State "discussing sentencing at the time of closing statement." The court sustained the objection.

[7] After the close of the State's case-in-chief, the State agreed to dismiss three of the presentation of a firearm during the commission of a felony charges.

8

Typically, juries must not consider sentencing issues or other related issues that may flow from sentencing, such as parole or probation, when deliberating a verdict during a criminal trial. Relevant to this matter, we have stated that "[q]uestions pertaining to parole rights are not germane to the question of guilt or innocence." *State v. Lindsey*, 160 W. Va. 284, 293, 233 S.E.2d 734, 739 (1977). This Court has consistently held that "[i]t is the duty of the jury to determine the guilt or innocence of the accused in accordance with the evidence introduced at the trial and it must not concern itself with matters of possible parole or probation." Syl. pt. 1, *id*. *See also* Syl. pt. 8, in part, *Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 ("The jury's sole function in a criminal case is to pass on whether a defendant is guilty as charged based on the evidence presented at trial and the law as given by the jury instructions. The applicable punishments . . . are not elements of the crime; therefore, the question of what punishment a defendant could receive if convicted is not a proper matter for closing argument."). We have further explained that "instructions of the trial judge dealing with the possibility of parole foster the dual vice of foisting upon the jury alien issues and concomitantly diluting its own sense of responsibility." *Lindsey*, 160 W. Va. at 290, 233 S.E.2d at 738.[8] We also find persuasive the Delaware Supreme Court's

---

[8] In *State v. Lindsay*, this Court also examined several authorities in other jurisdictions and recognized that it was generally improper to inform the jury as to sentencing and possible parole. *See*, *e.g.*, *Jones v. Commonwealth*, 72 S.E.2d 693, 694 (Va. 1952) (finding that a proper response to any inquiry of the jury relating to parole or

articulation of the dangers of allowing a jury instruction relating to parole. *See generally*

*Smith v. State*, 317 A.2d 20 (Del. 1974). First, the instruction may "becloud the issue before

[the jury] and open the way to a compromise verdict," because "knowledge on the part of

a jury that there is possible review by other governmental authorities may cause that jury

to avoid its responsibility and compromise on the question of guilt." *Id.* at 25 (quotations

and citation omitted). Second, "relying upon the possibility of parole, probation or the like,

a jury may be tempted to compensate for what it considers future leniency or release, and

deal with the case more severely than it might otherwise." *Id.* For these reasons, we

---

probation was to inform or instruct the jury that it was the duty of the jury, if it finds the accused guilty, to impose such punishment as it considered to be just under the evidence and within the limits stated in the court's instructions and that it must not concern itself with what may thereafter happen); *Strickland v. State*, 70 S.E.2d 710, 710 (Ga. 1952) (stating that under the circumstances of the case the instruction given by the trial court regarding the inquiry of the foreman was calculated to influence the jury against a recommendation of mercy and the court granted the defendant a new trial); *Kendrick v. State*, 312 So.2d 583, 588 (Ala. Crim. App. 1975) (explaining "that the trial court should not attempt to explain the functions of the pardon or parole board or to explain how it operates but to inform the jury in no uncertain terms that such matters are not proper for the jury's consideration and that the jury should determine the guilt or innocence of the defendant and the length of his imprisonment based entirely on the evidence presented to it."); *Smith v. State*, 317 A.2d 20, 26 (Del. 1974) ("[I]t is impermissible for a jury to consider and attempt to evaluate the uncertain effects of potential post-conviction remedies. Such conjecture is not within the traditional perimeters of a jury's function and has no place in our system of justice in this State."); *Lovely v. United States*, 169 F.2d 386, 391 (4th Cir. 1948) (finding "error was committed to the prejudice of defendant when the jury was instructed that a person sentenced to life imprisonment was eligible to parole after fifteen years" because "[t]he jury had nothing to do with the punishment of the defendant . . . and to charge as to eligibility for parole after fifteen years was to becloud the issue before them and open the way to a compromise verdict. What they were to decide was whether defendant was guilty or not and, if so, whether he should be given capital punishment.").

acknowledge the general rule that it is improper for either counsel or the court to inform the jury regarding a defendant's parole eligibility.[9]

In first-degree murder cases where the Legislature has given to the jury the power to recommend mercy, we have recognized an exception to this general rule. In those limited cases, the trial court must "instruct the jury that it may add a recommendation of mercy to such verdict and to explain to the jury the legal implications of such a recommendation." *Guthrie*, 194 W. Va. at 678, 461 S.E.2d at 184. Accordingly, when a

---

[9] The United States Supreme Court has similarly cautioned against informing a jury of a defendant's potential sentence:

> It is well established that when a jury has no sentencing function, it should be admonished to "reach its verdict without regard to what sentence might be imposed." *Rogers v. United States*, 422 U.S. 35, 40, 95 S. Ct. 2091, 2095, 45 L. Ed. 2d 1 (1975). The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury. The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged. The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict. Information regarding the consequences of a verdict is therefore irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion. See *Pope v. United States*, 298 F.2d 507, 508 ([5th Cir.]1962); *cf. Rogers*, *supra*, 422 U.S., at 40, 95 S. Ct., at 2095.

*Shannon v. United States*, 512 U.S. 573, 579, 114 S. Ct. 2419, 2424, 129 L. Ed. 2d 459 (1994) (footnotes omitted).

11

jury's potential recommendation of mercy is at issue, comments by the court or counsel regarding "the significance of this recommendation" and "appropriate argument against such a recommendation" may be permissible. *Id.* While we created an exception for first-degree murder cases involving a recommendation of mercy in *Guthrie*, we also reiterated our prior law condemning the practice of informing the jury about sentencing issues, including parole eligibility. We held that "[o]utside the context of cases involving a recommendation of mercy, it is improper for either party to refer to the sentencing possibilities of the trial court should certain verdicts be found or to refer to the ability of the trial court to place a defendant on probation." Syl. pt. 7, *id*.

Here, the circuit court instructed the jury regarding the penalty and parole eligibility for a first-degree murder conviction (and only for a first-degree murder conviction) for Mr. Smith. The court instructed the jury that their oath as jurors "requires [them] to accept and apply the law as stated in the[] instructions" and further explicitly instructed the jury that if it found Mr. Smith guilty of first-degree murder, Mr. Smith "will be confined to the penitentiary of this state for life, and as a juvenile when these subject acts occurred, . . . he will be eligible to be considered for parole after serving a minimum of [fifteen] years of his sentence." The court's instructions then described various factors the West Virginia Board of Parole may consider in determining Mr. Smith's eligibility.

The State argues that the court's instructions were permissible pursuant to *Guthrie*'s exception for this type of instruction in first-degree murder cases. However, the *Guthrie* exception does not apply in this case, because the jury was not considering whether to recommend mercy to Mr. Smith. *Guthrie* carved out a limited exception to the general rule against allowing the jury to consider sentencing possibilities because, in typical first-degree murder cases, the jury must determine whether to recommend mercy to a defendant found guilty of first-degree murder. *See* W. Va. Code § 62-3-15 (providing in part that if a jury finds a person guilty of first-degree murder, the jury may recommend mercy, "and if such recommendation is added to their verdict, such person shall be eligible for parole"); *see also* Syl. pt. 3, *Lindsey*, 160 W. Va. 284, 233 S.E.2d 734 ("In a case in which a jury may return a verdict of guilty of murder of the first[-]degree, it is the mandatory duty of the trial court, without request, to instruct the jury that to such verdict it may add a recommendation of mercy, that such recommendation would mean that the defendant could be eligible for parole consideration only after having served a minimum of ten years and that otherwise the defendant would be confined to the penitentiary for life without possibility of parole."). In those cases, the decision whether to recommend mercy to a defendant found guilty of first-degree murder is exclusively for the jury. *See Guthrie*, 194 W. Va. at 678, 461 S.E.2d at 184 ("[A] jury is not permitted to concern itself with sentencing matters outside of a recommendation of mercy."); Syl. pt. 2, in part, *State v. Reeder*, 248 W. Va. 346, 888 S.E.2d 846 (2023) ("'The recommendation of mercy in a first[-]degree murder case lies solely in the discretion of the jury.'" (alteration in original)

13

(quoting Syl. pt. 7, in part, *State v. Triplett*, 187 W. Va. 760, 421 S.E.2d 511 (1992)). However, where, as in this case, the defendant is less than eighteen years old at the time of the offense, then the defendant automatically receives mercy. *See* W. Va. Code § 61-11-23. Because the jury is not charged with considering the issue of whether to recommend mercy in cases where the defendant was a juvenile at the time of the offense, the *Guthrie* exception cannot apply.

While the jury found Mr. Smith guilty of first-degree murder, the jury did not have any role in sentencing, nor did it have the ability to recommend mercy because he was under the age of eighteen at the time of the alleged murders and was statutorily entitled to receive mercy. *See* W. Va. Code § 61-11-23. Sentencing simply was not a function within the purview of *this* jury and *Guthrie*'s exception does not apply under these circumstances.

The State also briefly asserts that the instruction was proper because it only served as a clarification to the previous instruction the parties agreed to during Ms. Walker's testimony. We disagree. First, the parties agreed to give an instruction to clarify *Ms. Walker's* testimony. Second, despite the State's contention that the instruction given during Ms. Walker's testimony later needed to be clarified, the State did not object to the court's wording of the instruction at the time the court gave the instruction. Third, while the instruction given during Ms. Walker's testimony could have been worded more clearly,

14

it was not an inherently incorrect statement of law. Finally, the instruction given during Ms. Walker's testimony was just that, an instruction given during a codefendant's testimony to clarify her testimony. The improper instruction in the final jury charge, instead, was specific to Mr. Smith and given to the jury before they deliberated (where they were also told to follow the court's instructions as a whole). As such, we are not persuaded by the State's argument that the court properly gave the penalty instruction to clarify a previous instruction during Ms. Walker's testimony.

In addition, to support its contention that the penalty instruction was not improper, the State endeavors to diminish the import of the instruction by arguing that it "was amongst almost 40 transcript pages of jury instructions" and "not brought before the jury again." However, after the circuit court had instructed the jury on the penalty, the State attempted to argue at closing before the jury, based upon that penalty instruction: "[b]ecause this young man is a juvenile, if you convicted of first[-]degree murder, it will be a life sentence, but guess what?" While the circuit court prohibited any further argument, we still find the State's argument on appeal unpersuasive. Because the circuit court instructed the jury regarding the consequences of a conviction when the *Guthrie* exception did not apply, the circuit court erred.

15

Mr. Smith further asserts that he has been inherently prejudiced by the circuit court's error of instructing the jury as to sentencing and parole consideration.[10] While the State attempts to argue that Mr. Smith was not prejudiced by this instruction, other than describing the elements for first- and second-degree murder, the State cites to no law to support its contention that Mr. Smith suffered no prejudice. Despite attempting to argue that there was no prejudice, the State conceded that this penalty instruction "likely alleviated any jury question that someone who had not yet reached the age of [twenty] would not be forced to spend his entire life in prison with no hope of parole." In other words, this improper instruction eased any concern the jury may have had about forcing a juvenile to spend the rest of his life in prison.

As this Court stated in *Guthrie*, typically, "placing sentencing matters before the jury is an issue prejudicial to the fact-finding function of the jury." 194 W. Va. at 678, 461 S.E.2d at 184 (quotations and citation omitted). *See also Lindsey*, 160 W. Va. at 287, 233 S.E.2d at 736 (observing that a "review of the authorities of other jurisdictions . . . indicates that the majority thereof hold it to be prejudicial error for the

---

[10]Mr. Smith essentially argues that the circuit court's improper instruction regarding penalties creates per se reversible error. However, we need not go so far as to decide whether it is per se reversible error or, conversely, whether the harmless error doctrine can apply in this situation. We need not reach that issue because the State relied nearly exclusively on its argument that the circuit court committed no error at all and because the State failed to adequately respond to Mr. Smith's contention that he was prejudiced by the improper instruction.

court to tell a jury that a prison sentence may be reduced and the prisoner released as a result of parole or pardon"). *C.f. State v. Parks*, 161 W. Va. 511, 515, 243 S.E.2d 848, 851 (1978) ("The general rule appears to be that it is reversible error for a trial court to advise the jury that a suspended sentence will follow from a guilty verdict."). Under the circumstances of this case, we see no reason to depart from our general rule. Therefore, "[i]t is with reluctance that we [vacate] the judgment below, and in so doing we emphasize that guilt or innocence of the charge . . . is not the determinative issue on which the ruling is made." *Smith*, 317 A.2d at 26. Rather, "[o]ur decision is based entirely on the [circuit court's instruction] to the jury" concerning the sentencing consequences and parole eligibility. *Id.*

## IV.

## CONCLUSION

For the reasons explained above, we vacate Mr. Smith's convictions and the Circuit Court of Kanawha County's January 24, 2023 sentencing order and remand this matter for a new trial and such other necessary proceedings consistent with this opinion.

Vacated and remanded.

17